STATE of Utah, Plaintiff and Respondent,

v.

Mark Anthony COLLINS, Defendant and Appellant.

No. 15812.

Supreme Court of Utah.

May 22, 1980.

Sheldon R. Carter, Provo, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, Noall T. Wootton, Utah County Atty., Provo, for plaintiff and respondent.

STEWART, Justice:

Defendant Collins was convicted by a jury of rape and forcible sodomy in violation of §§ 76–5–402 and 76–5–403, U.C.A.[1] He received concurrent prison sentences of one to fifteen years in the state prison. On appeal defendant seeks reversal of his convictions or a new trial on the grounds that

1. All statutory references are to Utah Code Ann. (1953), as amended.

the trial court improperly excluded results of a polygraph examination and that he was wrongly joined with two co-defendants.

This case arose from a hitchhiking incident in November 1977. Two fourteen-year-old girls, Stephanie and Susan, decided after an outing in Salt Lake City to hitchhike home rather than to return by bus. A car stopped for the girls; they got in the back seat and told the three male occupants in the front seat their destination—5600 South, approximately 30 blocks south of where they were picked up. Defendant Collins was one of the passengers in the car.

When the car reached 5600 South the men refused to stop. Susan testified that defendant Collins locked the door when she moved toward it to attempt to get out. The girls told the men, who had given fictitious names, that they wanted to go home, but the men continued driving and proceeded southbound on Interstate 15. Collins denied that Stephanie said she had to be home by any certain time and testified that the girls stated they "wanted to go party." During this drive defendant Collins and Susan changed places with each other; Stephanie and defendant Collins were then together in the back seat, and Susan sat between the driver, John Hyrum Laursen, and the other passenger, Henry Carl Smith. The car passed the Point of the Mountain (which is far south of 5600 South), left the freeway, and stopped for gas in Alpine in Utah County. The girls made no attempt to get help or to leave the car. The girls testified that they believed they were going to take a shortcut over the mountain (i.e., back North) to get home. The men, meanwhile, were drinking beer and smoking marijuana.

As they were driving up a mountain road, they encountered a parked Blazer with a flat tire and a girl standing beside it who was waiting for her companion to return. There was a brief conversation with her. Susan testified that thereafter Laursen stated that "[h]e was going to teach [her] and Stephanie a lesson about hitchhiking." The car was stopped, and defendant Collins began fondling Stephanie. She testified at trial that she had been told to "shut up" or she would be hurt and that both girls had cried during the incident. The girls testified as to various sex acts that had occurred. Susan, Smith, and Laursen had also engaged in sexual activity.

The testimony was conflicting as to the willingness of the girls to participate in these sex acts. Collins testified that he had stopped engaging in sexual activities when Stephanie objected. According to the testimony, Smith left the group and did not rejoin them. The girls, partially unclothed (voluntarily, according to Collins), got out of the car for a few minutes. There was also testimony that Susan had told Stephanie not to "plan any escape," since it would get them in trouble. After further sexual activity in which Collins testified Stephanie willingly participated, the girls stated they were warned not to report the incident and then driven back to Salt Lake City and let out of the car. Collins denied threatening the girls.

The two girls went to the apartment of Susan's sister and explained what had happened. The police were called, and the girls were taken to the hospital for an examination. The examining doctor testified that his findings "indicated recent sexual activity" with regard to both girls. His examination of Stephanie revealed no injuries, bite marks, or other evidence of physical abuse.

Collins, Laursen, and Smith were arrested and charged as co-defendants with rape and forcible sodomy. Smith pleaded guilty to a lesser charge. Laursen and Collins pleaded not guilty and were tried. Collins arranged on his own to take two polygraph tests administered by two different examiners. Defense counsel represented to the trial court that the results of these test suggested that Collins was truthful when he denied forcing Stephanie to have sexual relations with him or otherwise threatening her. There was no stipulation or agreement between the parties concerning the use or admissibility of the tests, nor was there court supervision of the testing process. At trial, the State objected to defendant Collins' attempt to introduce the test results on

the ground that a polygraph examination performed on Collins was not probative of the girl's state of mind. The trial court excluded the polygraph evidence.

Defendant Collins also made a pretrial motion to sever the trial as to the defendants. The trial court denied the motion. Collins and Laursen were tried jointly, and both were found guilty. Collins appeals this verdict.

Collins' argument that he was improperly joined with the co-defendants is not persuasive.[2] This Court in *State v. Pierre*, Utah, 572 P.2d 1338 at 1350 (1977), stated:

> As a general rule joinder of defendants is the procedure employed when " . . . it appears that persons were jointly involved in the commission of a crime so that the evidence against one is largely applicable to the other . . ." [*State v. Pass*, 30 Utah 2d 197, 200, 515 P.2d 612, 614 (1973).]

Section 77–21–44(4), U.C.A., which deals with misjoinder and certain other defects in an information, provides that "[n]o appeal . . . based on any of the defects enumerated in this section shall be sustained unless it is affirmatively shown that the defendant was in fact prejudiced in his defense upon the merits."

The trial court must, when defendants are charged jointly, weigh possible prejudice to any defendant with considerations of economy and practicalities of judicial administration. Doubts concerning prejudice should be resolved by the trial court in favor of a defendant, but the trial court must be accorded some discretion in denying a motion for severance. A denial will be reversed by this Court only if a defendant's right to a fair trial has been impaired. See *State v. Rivenburgh*, 11 Utah 2d 95, 355 P.2d 689 (1960).

The criminal acts charged against the defendants in the present case took place in the same automobile and during the same time period. A substantial part of the evidence and testimony offered by the State was relevant to charges against each of the defendants: namely, the evidence involving the initial "pick-up," the failure of the defendants to let the girls out of the car when they reached their desired destination, the subsequent route taken and stops made, and conversations between the victims and the defendants bearing on the question of consent. Equally important, none of the defenses of either accused was antagonistic to the interests of any co-defendant.

On these facts defendant Collins was not unduly prejudiced by the joinder of defendants in the information or by the joint trial.

Defendant also contends that the trial court erred in denying him the right to introduce polygraph evidence in support of his contention that the victim consented. Plaintiff proffered the testimony of two polygraph examiners, both of whom had examined the *defendant* with respect to the veracity of his testimony that the *victim* had consented to the acts charged.[3]

It was defendant's burden to establish, if he could, the admissibility of the opinions of the polygraph examiners. This Court has not held that polygraph examinations are admissible absent a binding stipulation between the parties. See *State v. Abel*, Utah, 600 P.2d 994 (1979); *State v. Jenkins*, Utah, 523 P.2d 1232 (1974).[4]

Defendant contends that there is a trend developing in the courts to admit polygraph

---

2. Joinder of defendants is authorized by § 77–21–31(2), U.C.A., if they are alleged to have participated in the same acts or transactions.

3. The prosecutors opposed the admission of the proffered evidence by representing to the court that the opinions of two polygraph operators, one associated with the prosecutor's office and one with the Salt Lake County Sheriff's office, were that no valid examination could be made because it was impossible to devise a valid control question due to the "number of parties

. . . and the situation where you are trying to determine the consent of a third party . . . ." These polygraph operators were not called to testify, and their opinions are not in the record other than by way of counsel's oral representations. Compare, however, *State v. Abel*, Utah, 600 P.2d 994 (1979).

4. Even if there is a stipulation, admissibility of evidence must be premised upon proof that the examiner was qualified and that the examination was conducted according to accepted prin-

evidence, and there are some recent decisions admitting polygraph examinations, at least under certain conditions. See *United States v. Ridling*, 350 F.Supp. 90 (E.D. Mich. 1972); *Commonwealth v. Vitello*, Mass., 381 N.E.2d 582 (1978); *Commonwealth v. A Juvenile (No. 1)*, 365 Mass. 421, 313 N.E.2d 120 (1974); *State v. Dorsey*, 88 N.M. 184, 539 P.2d 204 (1975); see also *United States v. DeBetham*, 348 F.Supp. 1377 (S.D. Cal. 1972), aff'd 470 F.2d 1367 (9th Cir. 1972); Tarlow, *Admissibility of Polygraph Evidence in 1975: An Aid in Determining Credibility in a Perjury-Plagued System*, 26 Hastings L.J. 917 (1975).

A vast majority of courts which have ruled on the issue, however, hold unstipulated polygraph examinations inadmissible. See cases collected in the following annotations: 53 A.L.R.3d 1005; 41 A.L.R.3d 1369; and 23 A.L.R.2d 1306. Many of the cases cited in these annotations are of an old vintage which do not reflect any advances which may have been made in more recent years in polygraph testing. Clearly, use of the technique is finding ever wider use by police departments, industry, and various agencies of the government of the United States. Moreover, the technique is being subjected increasingly to analysis by professional psychologists. Raskin, Barland, and Podlesny, *Validity and Reliability of Detection of Deception*, National Institute of Law Enforcement and Criminal Justice, Law Enforcement Assistance Administration, U.S. Department of Justice (1976); Barland and Raskin, *An Evaluation of Field Techniques in Detection of Deception*, Psychophysiology 12:321 (1975). See generally Reid and Inbau, *Truth and Deception*, 11–63 (2nd ed. 1977).

Nevertheless, it is impossible to address the issue of the admissibility of polygraph results without an adequate evidentiary record, including expert testimony which deals with such factors as the validity of the underlying theory upon which polygraph examinations are based, the practical application of those principles to the issue of detection of fabrication, the verifiability of polygraph test, and the problem whether successful deception of the polygraph can be accomplished. See, for example, *Commonwealth v. Vitello*, Mass., 381 N.E.2d 582 (1978). No such evidentiary foundation was adduced or proffered in the instant case.

Accordingly, the trial court's exclusion of the proffered testimony was appropriate.

The judgment of the trial court is affirmed.

CROCKETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.

---

ciples. It does not necessarily follow that licensure of the examiner pursuant to § 34–37–1 et seq., U.C.A., will by itself be sufficient to establish the examiner's qualifications. See *United States v. Ridling*, 350 F.Supp. 90, 96 (E.D. Mich. 1972). See also *State v. Valdez*, 91 Ariz. 274, 371 P.2d 894 (1962), which held that *polygraph evidence is admissible upon stipulation* "to corroborate other evidence of a defendant's participation in the crime charged," and to corroborate or impeach the defendant's testimony if he takes the stand, subject to certain qualifications. Under *Valdez* the decision as to admissibility is subject to the discretion of the trial judge, notwithstanding the parties' stipulation, and the opposing party is to have the right to cross-examine the polygraph examiner respecting (a) the examiner's credentials; (b) the test condition; (c) the "limitations of and possibilities for error in the technique of polygraphic interrogation"; and (d) any other pertinent facts.