OPINION OF THE COURT
Frederick M. Marshall, J.
An indictment was filed on July 27, 1981, charging this defendant and two other men with two counts of robbery in the first degree, two counts of criminal use of a firearm in the first degree, and criminal possession of a weapon in the second degree.
A suppression hearing was conducted before the undersigned to determine the admissibility of certain inculpatory statements uttered by the defendant in the presence of an Assistant District Attorney at the latter’s office on July 21,1981. The meeting was also attended by the defendant’s counsel and an investigator from the prosecutor’s office. Two Sheriff’s deputies who had brought the defendant from the holding center were stationed outside the office.
The facts are substantially undisputed. The only witnesses at the hearing were the Assistant District Attorney and defendant’s counsel.
*704 The defendant had been jailed for crimes that had allegedly occurred on July 13, 1981. On July 21, his attorney, with the hope that a dismissal or mitigation of the charges might result, contacted the Assistant District Attorney in charge of the case and requested a meeting. Counsel for the defendant, in discussing the proposed meeting over the telephone, indicated that he and his client would offer no objection to a transcript or a taped recording of the discussion.
At the outset of the meeting, the prosecutor informed the defendant that the latter was free to give his account of the events which led to his arrest. The Assistant District Attorney also informed the defendant that everything discussed at the meeting would be “off the record”. The defendant was not given any constitutional warnings as required by Miranda v Arizona (384 US 436).
The issue of immunity for the defendant was not broached by counsel for the defendant; nor does the record indicate that immunity was ever specifically proffered by the People.
The defendant’s preliminary remarks were mainly of an exculpatory nature in which he tended to place the blame for the criminal conduct involved on the shoulders of his codefendants. Eventually, the defendant made several admissions against his interest.
The question to be decided is whether the District Attorney’s statement that anything the defendant told him would be “off the record” amounted to a promise that would entitle the defendant to suppression of the resulting statements as involuntary.
CPL 60.45 (subd 2, par [b], cl [i]) insofar as applicable to the issues here, states:
“2. A confession, admission or other statement is ‘involuntarily made’ by a defendant when it is obtained from him:
“(b) [b]y a public servant engaged in law enforcement activity * * *
“(i) by means of any promise or statement of fact, which promise or statement creates a substantial risk that the defendant might falsely incriminate himself”.
*705 Certain facts here are crystal clear. The prosecutor conceded he made the statement that the discussion was intended to be “off the record”. In his view the remark was made to put the defendant at “ease” and to avoid the need at that time for a recorded conversation. He simply wanted to listen.
Defendant counsel’s understanding was to the effect that: “There were no discussions about what the phrase off the record meant. The minute I heard off the record, I relied on my experience as an attorney and gave it the common everyday meaning that any attorney in this district would give to the phrase off the record. There’s no question in my mind that this was solely for the purpose to determine whether or not he could be of some assistance in cracking this case and getting the two prime defendants and giving him the break he deserved under the circumstances. That was my only interpretation and that is also my interpretation at this time”.
No Miranda warnings were given by an experienced District Attorney nor was a waiver of immunity obtained. These statements were procured not by a police officer in the course of a routine investigation but by a prosecutor who prefaced the dialogue with language he chose (cf. People v Rittenhouse, 37 AD2d 866; People v Caserino, 16 NY2d 255, 260).
A promise has been defined as a declaration that gives the person to whom it is made a right to expect or to claim the performance or forbearance of a specified act. (Webster’s Third New Int Dictionary.)
In order for a statement to be deemed voluntary as a waiver of Fifth Amendment rights, it must not have been “ ‘extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by exertion of any improper influence’”. (Bram v United States, 168 US 532, 542-543; emphasis supplied.)
Historically, the expression “off the record” has been viewed and treated by the general legal community as remarks, or an account of events, that are deemed to be “unofficial”, that are not for quotation or publication, and not from a source to be identified. The connotations are *706 generally accepted in the same vein on a social, journalistic and political level.
The fact that there were no Miranda warnings and no request made of the defendant to waive his rights lends additional support to the conclusion that the prosecutor was willing to listen without jeopardy attaching.
Even if the defendant had been given the Miranda warnings, the People still carry the heavy burden of establishing beyond a reasonable doubt not only that the defendant understood his constitutional rights, but that his election to waive them was the result of the voluntary exercise of his own mental process without the use of any outside influences or pressures which may have tended to exert any leverage upon his ultimate decision. (People v Huntley, 15 NY2d 72; People v Schroder, 71 AD2d 907; People v Vigliotti, 75 AD2d 859.)
The conclusion is inescapable that a bargain was struck and that the Assistant District Attorney, intent on learning the extent of involvement by the defendant and his associates, promised to keep the defendant’s remarks inviolable.
A District Attorney, in the performance of his tasks, has the duty to familiarize himself and his office with all the available data relating to a particular case. But in achieving this knowledge and in the course of compiling evidence, he has the additional legal and ethical duty to honor commitments and be bound by representations or promises personally made to those with whom he deals with on a professional basis.
“The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict. This special duty exists because * * * the prosecutor represents the sovereign and therefore should use restraint in the discretionary exercise of governmental powers” (Code of Professional Responsibility, EC 7-13; People v Brown, 66 AD2d 158, 162).
The conclusions drawn herein may have been otherwise if the District Attorney had uttered remarks equivocating an act which he could not accomplish (e.g., withdrawal of a plea or promise of a lighter sentence) and the defendant, as *707 a matter of law, had no right to rely on the promises. (People v Selikoff, 35 NY2d 227, 241.)
It is another matter when a bargain has been struck and it rests in significant degree on the promise of the prosecutor, so that the latter may be said to be part of the inducement. In such circumstances, the breach of the agreement by the prosecution should not be condoned. (Santobello v New York, 404 US 257.)
The fact that the defendant initiated the request for the conference does not relieve the People of the burdens imposed under People v Huntley (15 NY2d 72, supra). (See People v Townes, 41 NY2d 97; People v Roberson, 41 NY2d 106.)
Accordingly, the People having failed to prove the statements voluntary beyond a reasonable doubt, the motion is granted. The statements made by the defendant in the District Attorney’s office on July 21, 1981 are suppressed.