STATE of Utah, Plaintiff and Respondent,

v.

Randy Ruben VELARDE, Defendant and Appellant.

No. 19682.

Supreme Court of Utah.

Dec. 4, 1986.

Andrew A. Valdez, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., J. Stephen Mikita, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

Defendant Randy Ruben Velarde was convicted of murder in the second degree, U.C.A., 1953, § 76–5–203(1)(a), (b) (Repl. Vol. 8B, 1978 ed., Supp.1985) (amended 1986), following a trial before a jury. We affirm.

On June 13, 1983, Richard McIntyre was attacked from behind without provocation by three individuals as he sat on a picnic bench at Washington Park in Salt Lake City. Two of the attackers carried wood two-by-fours approximately two and one-half feet long, while the third carried a rounded piece of wood resembling an ax handle. McIntyre sustained at least six head wounds caused by separate blows from a blunt object, any one of the blows being sufficient to cause death. He died on June 16, 1983, as a result of the head injuries.

Two individuals were sitting with McIntyre at the time of the attack: his fiancé, Sherry Miller, and a friend, Robert Shelton. Another eyewitness, Gerald Collins, was in a car pulling away from the park at the time of the attack. Among them, these three eyewitnesses identified at trial Jerry Velarde, Randy Velarde, and Ignacio Sanchez as the assailants.

Sanchez, who initially was also charged with second degree murder, agreed to cooperate with the prosecution and to testify against the Velarde brothers in exchange for a plea to aggravated assault. Sanchez testified that Jerry wanted to jump McIntyre because McIntyre had beaten Jerry up and bitten his nose. Sanchez and Randy were going to back up Jerry. Sanchez admitted that he and the Velarde brothers carried out the attack, but claimed that he did not hit the victim. Sanchez also testified that prior to the assault on McIntyre, the three assailants had drunk some wine and a fifth of vodka among them.

Defendant's first point on appeal is that the trial court erred in refusing to grant defendant's motion for a mistrial following

admission of evidence in violation of a pretrial suppression order.

On the night of defendant's arrest, a Salt Lake City Police officer, Officer Chapman, read defendant his *Miranda* rights.[1] Defendant asked to talk to an attorney and did in fact speak to an attorney. Defendant then told Chapman that he was not going to talk to him. Sometime later, Chapman told defendant that if defendant had anything he wanted to say to Chapman, it would be "off the record." At that point, defendant told Chapman that he had been bitten on the leg by a dog that evening.[2] Officer Chapman then took a picture of defendant's leg where the dog had bitten him.

Prior to trial, defendant made a motion to suppress the statement about the dog bite. The court ordered that the statement be suppressed at trial. The picture was not ordered suppressed. At trial, the prosecutor, in attempting to lay foundation for admission of the picture, elicited testimony from Officer Chapman on the suppressed statement over repeated objections by defendant's counsel. Following admission of the statement, the judge conceded that he had erred in allowing the testimony in evidence, but concluded that its admission was harmless error and refused to grant a mistrial. The judge did instruct the jury to disregard the statement made by Randy to Officer Chapman. The picture was not admitted.

■ The first question to be decided is whether the officer's statement that if defendant had anything he wanted to tell the officer, it would be off the record amount-

ed to a promise that would entitle defendant to suppression of the resulting statement. Under the circumstances extant, we hold that it does.

■ In order for a statement to be deemed voluntary as a waiver of fifth amendment rights, the statement must not have been elicited by threats or violence or by any direct or implied promises.[3] "Promise" has been defined as a "declaration that gives the person to whom it is made a right to expect or to claim the performance or forbearance of a specified act."[4] The expression "off the record" has been treated by the legal community as a promise to treat remarks or accounts of events as unofficial and not for quotation or publication.[5]

In light of the fact that defendant had been given his *Miranda* rights, had invoked those rights, and had told Chapman that he would not talk to him, Officer Chapman's statement that anything defendant wanted to say thereafter would be "off the record" could only be viewed as a promise not to use those statements against defendant and is a form of indirect and continued questioning in violation of defendant's *Miranda* rights. Chapman clearly intended by his remarks to encourage defendant to tell Chapman about defendant's involvement in the events of the evening.

■ In order to overcome this inference, the State bears a heavy burden to establish not only that defendant understood his constitutional rights, but that he voluntarily elected to waive them.[6] The State did not

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Sherry Miller testified that her dog had bitten one of the assailants on the leg during the assault. She could not identify which assailant was bitten. Therefore, defendant's statement that he had been bitten by a dog on the evening of the assault raised the inference that he had been at the scene and was the assailant bitten by Miller's dog.

3. *Bram v. United States*, 168 U.S. 532, 542–43, 18 S.Ct. 183, 186–87, 42 L.Ed. 568 (1897); *People v. Bolla*, 112 Misc.2d 703, 447 N.Y.S.2d 398, 400 (N.Y.Sup.Ct.1982).

4. *Bolla*, 447 N.Y.S.2d at 400 (citation omitted).

5. *See id.*

6. *See People v. Braeseke*, 25 Cal.3d 691, 702, 602 P.2d 384, 390–91, 159 Cal.Rptr. 684, 690–91 (1979) (plurality opinion), *judgment stayed*, 444 U.S. 1309, 100 S.Ct. 742, 62 L.Ed.2d 720 (Rehnquist, Circuit Justice), *vacated*, 446 U.S. 932, 100 S.Ct. 2147, 64 L.Ed.2d 784 (mem.), *aff'd*, 28 Cal.3d 86, 618 P.2d 149, 168 Cal.Rptr 603 (1980) (en banc), *cert. denied*, 451 U.S. 1021, 101 S.Ct. 3015, 69 L.Ed.2d 395 (1981).

meet that burden to the satisfaction of the judge who heard the suppression order or to this Court. The prosecutor erred in soliciting the suppressed statement, and the trial court erred in admitting it.

■ This is not to say that invocation of "off the record" would in all circumstances serve to require suppression of any statements thereafter. However, each case turns on its facts, and on the facts extant here the pretrial decision to suppress the statement was proper.

■ However, a determination that use of the suppressed statement constitutes error does not end the inquiry. It is well established that the admission of statements obtained in violation of *Miranda* can be harmless error.[7] Before federal constitutional error can be held harmless, a court must "be able to declare a belief that it was harmless beyond a reasonable doubt."[8] In order to make this declaration, "it is necessary to review the facts of the case and the evidence adduced at trial" to determine the effect of the challenged evidence "upon the other evidence adduced at trial and upon the conduct of the defense...."[9] Applying the foregoing standard, there is no doubt that the error in this case was harmless to defendant.

The evidence adduced at trial was substantial as to defendant's guilt. The testimony concerning the sequence of events and the events themselves from Sanchez, Miller, Collins, and Shelton shows little discrepancy, and each witness's testimony substantively corroborates that of the others. Further, Sanchez, Collins, and Jerry Velarde each identified defendant as being at the scene and as the assailant who struck the first blow to McIntyre.

Thus, evidence raising only an inference that defendant was at the scene was totally unnecessary, was duplicative of a volume of direct testimony, and could have had no effect on the jury's decision. Therefore, this Court has no hesitation in declaring that the admission of defendant's statement to Chapman was harmless beyond a reasonable doubt.

Defendant's second point on appeal is that the trial court erred in denying a motion to sever defendant's case from that of his co-defendant and brother, Jerry Velarde. The State charged and tried defendant and Jerry Velarde jointly for McIntyre's murder. Before trial, defendant's attorney moved to sever defendant's trial from Jerry's. The trial judge denied the motion.

U.C.A., 1953, § 77–35–9 (Repl.Vol. 8C, 1982 ed.) (Utah R.Crim.P. 9) governs the joinder and severance of defendants for trial. That section states in pertinent part:

(b) Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or conduct or in the same criminal episode.

. . . .

When two or more defendants are jointly charged with any offense, they shall be tried jointly unless the court in its discretion, on motion or otherwise, orders separate trials consistent with the interests of justice.

. . . .

(d) If it appears that a defendant or the prosecution is prejudiced by a joinder of offenses or defendants in an indictment or information, or by a joinder for trial together, the court shall order an election of separate trials of separate counts, or grant a severance of defendants, or provide such other relief as justice requires.

■ Accordingly, severance is not available as a matter of right. Instead, whether severance is granted depends upon whether the trial court determines that prejudice to the defendant outweighs con-

**7.** *Harryman v. Estelle,* 616 F.2d 870, 875 (5th Cir.), *cert. denied,* 449 U.S. 860, 101 S.Ct. 161, 66 L.Ed.2d 76 (1980).

**8.** *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). *See also*

*Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963).

**9.** *Fahy,* 375 U.S. at 87, 84 S.Ct. at 230.

siderations of economy and practicalities of judicial administration, with doubts being resolved in favor of severance. A denial of severance will only be reversed by this Court if it is affirmatively shown that a defendant's right to a fair trial has been impaired.[10]

Turning to the facts of this case, the charges against defendant and Jerry Velarde resulted from their participation in the same criminal act, the assault upon McIntyre. Almost the entire quantum of evidence and testimony offered by the State was relevant to both defendants, including evidence regarding the sequence of events, the participants, the weapons, and the events themselves.

Defendant, however, contends that severance of his trial from Jerry's should have been granted because the defenses of the co-defendants were antagonistic to one another. Jerry admitted being at the scene of the assault and admitted his participation in the assault on McIntyre. Jerry also identified defendant as being at the scene and as striking the first blow with a stick. Jerry's defense was that he did not intend to seriously injure or kill McIntyre. Defendant, on the other hand, did not take the stand in his own defense at trial or put on any witnesses in his defense. Defendant instead chose to put the State to its proof.

■ Antagonistic defenses alone are not sufficient to require a separate trial. The test of whether antagonistic defenses by two defendants require severance is whether the defenses conflict to the point of being irreconcilable and mutually exclu-

sive.[11] As indicated above, however, a trial judge's denial of severance will be reversed on appeal only if the conflict in the co-defendants' respective positions at trial was of such a nature that, considering all the evidence in the case, the defendants were denied a fair trial.[12]

■ The trial court in this case did not abuse its discretion in refusing to sever defendant's trial from Jerry's. Defendant did not specifically raise the issue of antagonistic defenses in his pretrial motion to sever. Thus, the judge originally did not have that issue before him and could not have foreseen Jerry's testimony.

Moreover, considering all of the evidence in the case, defendant was not denied a fair trial. As noted before, the evidence adduced at trial in this case was substantial as to defendant's guilt. Two eyewitnesses besides Jerry placed defendant at the scene and identified defendant as the assailant striking the first blow, and testimony of other eyewitnesses tended to implicate defendant as being at the scene. The only evidence that might have been different or unavailable at a separate trial was Jerry's. Nevertheless, while Jerry's testimony as to himself was exculpatory, his testimony regarding defendant was merely duplicative of other testimony that would have been available irrespective of severance. We also note that defendant had ample opportunity to cross-examine Jerry and attempt to discredit his testimony. Defendant did not cross-examine Jerry at all.

We conclude that under these circumstances, considerations of judicial economy far outweigh any possible prejudice to de-

**10.** *State v. Collins*, 612 P.2d 775, 777 (Utah 1980); *State v. Pierre*, 572 P.2d 1338, 1350 (Utah 1977), *cert. denied*, 439 U.S. 882, 99 S.Ct. 219, 58 L.Ed.2d 194 (1978); *State v. Rivenburgh*, 11 Utah 2d 95, 108–09, 355 P.2d 689, 698 (1960), *cert. denied*, 368 U.S. 922, 82 S.Ct. 246, 7 L.Ed.2d 137 (1961). This standard of review is in some respects analogous to U.C.A., 1953, § 77–35–30(a) (Repl.Vol. 8C, 1982 ed.) (Utah R.Crim.P. 30(a)), which states: "Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded." The substantial rights of a defendant are affected only where a review of the record persuades this Court that without the error there was "'a reasonable likelihood of a more favor-

able result for the defendant.'" *State v. Fontana*, 680 P.2d 1042, 1048 (Utah 1984) (quoting *State v. Hutchison*, 655 P.2d 635, 637 (Utah 1982)).

**11.** *E.g., United States v. Sheikh*, 654 F.2d 1057, 1065 (5th Cir.1981), *cert. denied*, 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982).

**12.** *E.g., State v. Nelson*, 298 N.C. 573, 587, 260 S.E.2d 629, 640 (1979), *cert. denied*, 446 U.S. 929, 100 S.Ct. 1867, 64 L.Ed.2d 282 (1980); *see also* Annot., 82 A.L.R.3d 245 (1978 & Supp. 1986).

**446**

fendant from joinder of his trial with Jerry's.[13]

Defendant's third point on appeal is that the trial court erred by refusing to instruct the jury on the offense of aggravated assault. Defendant contends that this offense is a lesser included offense of second degree murder.

■ This Court in *State v. Baker*[14] set forth the standards to be used to determine whether a jury should be instructed on lesser included offenses. If a defendant requests a lesser included offense instruction, as was the case here, an evidence-based standard controls.[15] To determine whether an offense is included in a charged offense, the trial court must first decide whether the offense is established by proof of the same or less than all the facts required to establish the commission of the offense charged.[16] If the same facts tend to prove the elements of more than one statutory offense and the evidence is ambiguous and susceptible to alternative explanations, the trial court must give the lesser included offense instruction if any one of the alternative interpretations provides both a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.[17]

The information filed against defendant charged that defendant committed second degree murder in that he "intentionally or knowing caused the death of Richard Dean McIntyre and/or intending to cause serious bodily injury to another committed an act clearly dangerous to human life that caused the death of Richard Dean McIntyre." The information was read to the jury.

The jury instructions advising the jurors of the elements they must find in order to convict defendant of second degree murder included only the elements found in U.C.A., 1953, § 76–5–203(1)(a) and (b) (Repl.Vol. 8B, 1978 ed., Supp.1985) (amended 1986). Those subsections state:

Criminal homicide constitutes murder in the second degree if the actor:

(a) Intentionally or knowingly causes the death of another; or

(b) Intending to cause serious bodily injury to another, he commits an act clearly dangerous to human life that causes the death of another....

Assault consists of an attempt, with unlawful force or violence, to do bodily injury to another or a threat, made in conjunction with a show of immediate force or violence, to do bodily injury to another.[18] Assault becomes aggravated when the actor intentionally causes serious bodily injury to another or, alternatively, when the actor uses a deadly weapon or such means or force likely to produce death or serious bodily injury.[19]

In *State v. Jerry Velarde*,[20] we held that for purposes of a requested instruction by an accused, aggravated assault is a lesser included offense of second degree murder, as defined in subsections 76–5–203(1)(a) and (b).

■ The State, however, claims that defendant cannot satisfy the second part of the *Baker* test. The State's position is this: except for the element of death (it is clear that McIntyre died as the result of the injuries he sustained), the elements of aggravated assault and murder in the second degree, as charged in this case, are the same. Accordingly, the State claims, "[I]f a jury found defendant innocent of murder in the second degree they could not rationally find defendant guilty of aggravated

**13.** *See Collins,* 612 P.2d at 777.

**14.** 671 P.2d 152 (Utah 1983).

**15.** *Id.* at 156–59.

**16.** U.C.A., 1953, § 76–1–402(3)(a) (Repl.Vol. 8B, 1978 ed.).

**17.** *State v. Oldroyd,* 685 P.2d 551, 553–54 (Utah 1984); *Baker,* 671 P.2d at 158–60.

**18.** U.C.A., 1953, § 76–5–102 (Repl.Vol. 8B, 1978 ed.).

**19.** U.C.A., 1953, § 76–5–103 (Repl.Vol. 8B, 1978 ed.).

**20.** 734 P.2d 449 (Utah, 1986).

assault." We pointed out the infirmity of this argument in *State v. Jerry Velarde.* [21] In short, the premise upon which the State's argument is grounded is incorrect. To be guilty of murder in the second degree under subsections (1)(a) and (1)(b) of section 76–5–203, a defendant must *intentionally* or *knowingly* cause the death of another or, *intending* to cause serious bodily injury to another, must commit a clearly dangerous act that results in another's death. Subsection (b) of section 76–5–103 (aggravated assault) does not require a similar mens rea. Therefore, the elements of the crimes are not the same.

▉ It does not necessarily follow that the trial court erred by not charging the jury with defendant's requested instruction. As indicated above, the standard enunciated in *Baker* is to be applied contextually, and under the facts of this case, we conclude that the trial court committed no error in refusing to instruct the jury on the crime of aggravated assault in regard to defendant.

▉ In his brief, defendant does not claim that he was not one of the three assailants who approached McIntyre while carrying sticks. Instead, he takes the position that evidence was presented at trial from which a jury could have concluded that he did not strike McIntyre. Defendant claims that this evidence, if believed by the jury,[22] could have led it to acquit him of second degree murder and convict him of aggravated assault. In support of this argument, defendant relies upon portions of testimony given by Miller and Shelton.

Shelton testified that he heard a "thump," turned around to determine the nature of the noise he had heard, and saw McIntyre being struck, presumably for the second time. Shelton did not identify who struck the blow that he observed. Defendant claims that Sherry Miller testified that

only two of the three assailants who approached the table struck McIntyre while the other man just stood there. Moreover, Miller could not identify defendant as one of the assailants who struck McIntyre.

Defendant contends that the testimony of these witnesses establishes that one or two of the assailants struck McIntyre and that one or two of the assailants did not strike McIntyre. Further, because neither of these witnesses testified that defendant hit McIntyre, defendant would have us hold that a jury could have reasonably found defendant guilty only of aggravated assault and not guilty of second degree murder. This argument does not follow for many reasons, only two of which we choose to discuss.

First, while Miller did testify that only two of the assailants hit McIntyre with sticks while he was sitting on the picnic table, she further testified on more than one occasion that *all* of the assailants kept hitting McIntyre once he was knocked off the table and fell to the ground. Shelton's testimony is not at all inconsistent with the testimony given by Miller. Shelton simply testified that before running across the street to seek assistance, he was looking away from the victim and, after hearing the thump, turned around long enough to see McIntyre being struck once. The fact that Miller testified that all three assailants beat her fiance once he was on the ground and the fact that Shelton did not testify inconsistently with this testimony itself defeats defendant's argument.

Second, defendant's argument hinges upon the existence of evidence concerning whether he committed the act of striking McIntyre. The jury was instructed as follows:

You are instructed that every person, acting with the mental state required for the commission of an offense, who direct-

---

**21.** *Id.* at 453–54.

**22.** In determining whether a reasonable jury could acquit on the greater charge and find guilt on the lesser charge, the court must view the evidence and inferences that can be drawn from it in the light most favorable to the defendant. Moreover, as stated in *State v. Crick,* 675 P.2d 527, 539 (Utah 1983) (Stewart, J., dissenting), "the inquiry is not whether a *judge* thinks the defendant should, in fact, be acquitted, but only whether a reasonable *jury* could acquit on the greater charge and find guilt on the lesser charge." (Emphasis in original.)

ly commits the offense, who solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense, shall be criminally liable as a party for such conduct.

This instruction parallels U.C.A., 1953, § 76-2-202 (Repl.Vol. 8B, 1978 ed.). Thus, the jury was instructed upon an alternative theory for imputing the other two assailants' acts to defendant. The undisputed facts indicate that defendant was present at the scene and in possession of a deadly weapon. All the evidence was to the effect that defendant was present to give support to Jerry. Thus, the record amply supports the conclusion that defendant "aided" the other two assailants in beating McIntyre. Moreover, defendant refers us to no evidence calling his mental state into question.[23] Defendant's claim that he was entitled to an aggravated assault instruction is therefore without merit.

Defendant's final point on appeal is that defendant was unfairly prejudiced by testimony by a witness that he had met defendant in jail. During direct examination of Sanchez by the prosecutor, the following exchange took place:

Q.: Would you explain how long you had known Mr. Randy Velarde prior to this time?

A.: Well, we ... Randy Velarde ...

Q.: Well, if you would, let me stop you there. Tell only the answer, how long you had known him prior to that time.

A.: Since May of '83 '82, in jail.

Defense counsel objected, and the objection was overruled. Later, defendant moved for a mistrial based on the "in jail" statement. That motion was denied.

■ Defendant now equates a single phrase, clearly elicited inadvertently, made during a three-day trial to the prejudice inherent in requiring a defendant to stand trial while wearing prison garb. This argument is meritless.

While there is little doubt that some prejudice might result from the jury's being informed, however briefly, that a defendant had formerly been in jail, the prejudice must be such that it is unfair. Utah Rule of Evidence 103 provides in pertinent part: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected...." Thus, defendant must make some showing that the verdict was substantially influenced by the challenged testimony. As this Court said in State v. Malmrose,[24] "[A]n erroneous admission of evidence is treated as harmless error absent a showing that it had a substantial influence in bringing about the verdict."[25] No such showing has been made here.

Defendant's conviction is therefore affirmed.

WE CONCUR:

STEWART, DURHAM and ZIMMERMAN, JJ., concur.

HOWE, J., concurs in the result.

---

**23.** Because the jury was instructed that it had to find each element of the crime beyond a reasonable doubt to convict defendant, the jury's verdict implicitly found that defendant had the intent to cause McIntyre's death or had the intent to cause serious bodily injury. Defendant did not show that he voluntarily terminated his efforts prior to the commission of the offense and either gave timely warning to the police or to the intended victim or wholly deprived his prior efforts of effectiveness as required by Utah's withdrawal statute. U.C.A., 1953, § 76-2-307 (Repl.Vol. 8B, 1978 ed.).

**24.** 649 P.2d 56 (Utah 1982).

**25.** Malmrose, 649 P.2d at 59 (interpreting Utah R.Evid. 4 (Repl.Vol. 9B, 1977 ed.) (superseded Sept. 1, 1983)).