2011 UT App 9

**STATE of Utah, Plaintiff and Appellee,**

**v.**

**Norman PROWS, Defendant and Appellant.**

**No. 20080453–CA.**

Court of Appeals of Utah.

Jan. 13, 2011.

Margaret P. Lindsay and Douglas J. Thompson, Spanish Fork, for Appellant.

Mark L. Shurtleff and Ryan D. Tenney, Salt Lake City, for Appellee.

Before Judges DAVIS, McHUGH, and ORME.

## OPINION

DAVIS, Presiding Judge:

¶ 1 Defendant Norman Prows appeals his conviction for aggravated sexual abuse of a child. He first argues that the trial court erred by refusing to suppress evidence of the confession he made to the police. He then argues, alternatively, that he should have been allowed to present expert witness testimony regarding how his mental state may have affected his confession. We affirm.

## BACKGROUND

¶ 2 After some concern and questioning by her mother, the victim, Prows's eleven-year-old stepdaughter, acknowledged that Prows had touched her inappropriately on several occasions. Prows was subsequently interviewed by two police officers. During the interview, Prows was accompanied by an attorney that he had recently retained. The interview lasted less than an hour, including thirteen minutes midway through the interview where Prows and his attorney conferred in private. According to Prows, he was sleep-deprived during the interview and had not taken the medication that he had been prescribed to treat his depression and adult attention deficit disorder (ADD). However, Prows had filled out a personal information form at the police station that indicated that he was feeling "good" and had slept the prior

night. He also indicated that he was on medications for his depression and ADD, having taken those medications that morning.

¶ 3 In their questioning, the police officers used the false-friend technique.[1] And as the interview progressed, Prows became increasingly upset and emotional. Eventually, Prows admitted to inappropriately touching the victim on three occasions. However, Prows denied the police officers' accusations that inappropriate conduct had happened on more than these three occasions and that he had molested other children.

¶ 4 Prows later attempted to have his confession suppressed. The trial court denied Prows's motion, determining that Prows "did not suffer from a mental illness sufficient to render him incapable of asserting his rights or resisting questioning." The trial court also determined that Prows's confession was "not a result of police misconduct." In concluding that the interrogation was not unconstitutionally coercive, the trial court considered important the following facts: the police officers did not make threats or promises to Prows, the police officers did not misrepresent the evidence against Prows, Prows did not "parrot" back details presented by the police officers, and Prows remained in disagreement with the police officers regarding some of their accusations.

¶ 5 At trial, the victim testified as to the sexual abuse she had endured at the hands of Prows. This testimony was supported by both the testimony of the victim's mother that she had once witnessed Prows asleep with the victim on the couch with his hand on her crotch and the testimony of the victim's sister that she had once been present during some inappropriate touching. The State also presented evidence of Prows's confession to the police officers and the victim's mother's testimony that the night prior to the police interview, Prows had called her and tearfully apologized. Prows testified in his defense, explaining his emotional and fearful state at the time of the police interview. Prows also sought to introduce testimony of a psychiatrist to the effect that Prows suffered from personality disorders that would make him more susceptible to the false-friend technique and more likely to confess to something he did not do. This latter testimony was excluded by the trial court under rule 608 of the Utah Rules of Evidence as giving impermissible character evidence.

¶ 6 The jury ultimately returned a guilty verdict on one count of aggravated sexual abuse of a child, and Prows was thereafter sentenced to five years to life in prison. Prows now appeals the denial of his motion to suppress and, in the alternative, the exclusion of the psychiatrist's testimony under rule 608.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 Prows first claims that his confession was coerced and that the trial court therefore should have suppressed it.

> In reviewing a trial court's determination on the voluntariness of a confession, we apply a bifurcated standard of review. The ultimate determination of voluntariness is a legal question; accordingly, we review the district court's ruling for correctness. We set aside a district court's factual findings only if they are clearly erroneous.

*State v. Rettenberger,* 1999 UT 80, ¶ 10, 984 P.2d 1009 (citations and internal quotation marks omitted).

¶ 8 Prows alternatively argues that he should have been allowed to present expert testimony regarding his mental state and how it may have impacted his confession. Cases involving the admissibility of expert

---

1. The false-friend technique is where police officers represent to a suspect that they are his friends and are acting in his best interest. *See State v. Rettenberger,* 1999 UT 80, ¶ 24, 984 P.2d 1009.

 This technique is commonly used in police interrogations because resistance to the disclosure of information is considerably increased ... if something is not done to establish a friendly and trusting attitude on the part of the subject. In this atmosphere ... the suspect is fooled into trusting that the interrogator's behavior will conform to the norms of friendship: the interrogator will loyally help the suspect out of the jam, advise the suspect to confess only if confession will be beneficial [to the suspect], and so on.

 *Id.* (omissions and alteration in original) (citation and internal quotation marks omitted).

testimony are reviewed under an abuse of discretion standard. *See State v. Adams,* 2000 UT 42, ¶ 9, 5 P.3d 642.

## ANALYSIS

### I. The Admissibility of Prows's Confession

 ¶ 9 Prows argues that the trial court's refusal to suppress his confession violated his constitutional right against compulsory self-incrimination, *see* U.S. Const. amends. V, XIV. " 'In the face of a challenge to the voluntariness of a statement or confession, it is incumbent upon the prosecution to demonstrate by a preponderance of the evidence that the statement was made voluntarily based upon the totality of the circumstances.' " *Rettenberger,* 1999 UT 80, ¶ 45, 984 P.2d 1009 (quoting *State v. Allen,* 839 P.2d 291, 300 (Utah 1992)). " '[T]he totality of circumstances [includes] both the characteristics of the accused and the details of the interrogation.' " *Id.* ¶ 14 (alterations in original) (quoting *State v. Strain,* 779 P.2d 221, 225 (Utah 1989)). When considering the details of the interrogation, we look to external factors that include "the duration of the interrogation, the persistence of the officers, police trickery, absence of family and counsel, and threats and promises made to the defendant by the officers." *Id.* When considering the characteristics of the accused, we address subjective factors such as "the defendant's mental health, mental deficiency, emotional instability, education, age, and familiarity with the judicial system." *Id.* ¶ 15. In sum, we look at all the above factors "to determine whether the interrogators exploited [Prows]'s disabilities and deficiencies in such a way that his will was overborne." *Id.* ¶ 19 (internal quotation marks omitted); *see also id.* ¶ 11 ("[A]nalysis of whether admis-

sion of a confession into evidence violates the Fifth or Fourteenth Amendment does not turn solely on the 'voluntariness' of the confession. [C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.' " (second alteration in original) (additional internal quotation marks omitted)). *See generally* U.S. Const. amend. V. (providing that no person "shall be *compelled* in any criminal case to be a witness against himself" (emphasis added)).

### A. The Details of the Interrogation

 ¶ 10 Each of the external factors indicate a lack of coercion in this case. First, the interrogation was quite short in duration, lasting a total of fifty-one minutes, which included a thirteen-minute break in which Prows and his attorney conferred privately. *See State v. Montero,* 2008 UT App 285, ¶ 12, 191 P.3d 828 (stating, in considering an interrogation that was "off and on" for over six hours, "The duration of an interrogation has typically been viewed as coercive only when it is much longer than in the instant case."). Second, the police officers here were not particularly persistent, at least no more persistent than in any other interview with a suspect. *See generally id.* ¶ 13 ("[W]e think it eminently reasonable that police officers challenge criminal suspects' questionable explanations in their pursuit of the truth and their efforts to solve crimes.").[2] Third, there was no police trickery other than the use of the false-friend technique, which is not alone sufficient to render a confession involuntary, *see Rettenberger,* 1999 UT 80, ¶ 28, 984 P.2d 1009. Fourth, Prows had an attorney present during the entirety of the interview and conferred privately with the attorney both before and during the interrogation.[3] Fifth,

---

**2.** We also recognize that the police officers allowed Prows to consult with his attorney in private upon request. And although Prows argues that the police officers essentially ignored a request by his attorney to stop the interrogation, the trial court found—and Prows does not directly challenge the finding—that the statement by the attorney was ambiguous.

**3.** Prows also makes an ineffective assistance of counsel argument. "[I]n reviewing counsel's performance, we give trial counsel wide latitude in making tactical decisions and [do] not question those tactical decisions unless there is no

reasonable basis supporting them." *State v. Maestas,* 1999 UT 32, ¶ 20, 984 P.2d 376. Even assuming that the right to effective assistance of counsel extends to an attorney's actions during a police interrogation, Prows's claim is unavailing. Prows had adamantly maintained, even when conferring with his attorney in private, that he had never inappropriately touched the victim. Given this position, as well as the lack of improper coercive practices on the part of the police officers, we cannot say that Prows's counsel rendered ineffective assistance by failing to anticipate and prevent his confession.

the police officers did not make "a threat of greater punishment or a promise for lesser punishment depending on whether [Prows] confessed."[4] *See id.* ¶ 29. In sum, aside from the fact that the police officers chose to utilize the false-friend technique, there is simply nothing indicative of coercion in the details of the interrogation.

### B. The Characteristics of the Accused

■ ¶ 11 While "a determination of involuntariness cannot be predicated solely upon a defendant's mental state, his mental state is relevant to the extent it made him more susceptible to mentally coercive police tactics." *Id.* ¶ 17. The only subjective factors that Prows raises as supporting his argument of an involuntary confession are his mental health and emotional instabilities. He specifically argues that he was suffering from depression, anxiety, Dependent Personality Disorder (DPD), and ADD.[5] He also argues that he was emotional due to existing family problems and due to the police officers' reference to the fact that he had been the victim of abuse when he was a child.

¶ 12 "We now consider [these] subjective characteristics, especially as known to the interrogating officers, to determine the extent to which those characteristics made [Prows] more susceptible to manipulation." *State v. Rettenberger,* 1999 UT 80, ¶ 37, 984 P.2d 1009. We see nothing that would have alerted the police officers to Prows's DPD or emotional instability, and as the trial court found, Prows "did not exhibit below-average cognitive abilities." And although Prows did

disclose to the police officers that he suffered from depression and ADD, he also indicated—and the trial court found—that he had taken his medications for those conditions that morning. Thus, the police officers did not know of many of Prows's alleged mental health issues, and they had no reason to think they could exploit the issues of which they were aware via the false-friend technique. Furthermore, although Prows eventually confessed to the type of conduct alleged by the police officers, he did not agree with every assertion made by the police officers or simply parrot back details suggested by them. Instead, he provided the details of his confession on his own and disagreed with several assertions the police officers made regarding the abuse, including the number of times it occurred and the victimization of other children. We therefore agree with the trial court that Prows's subjective characteristics did not make him significantly more susceptible to manipulation, and we cannot say that the trial court erred when it determined that the use of the false-friend technique in these circumstances did not overpower Prows's will.

### II. The Presentation of Expert Testimony

#### A. Rule 608

■ ¶ 13 Prows alternatively argues that the trial court should have allowed his expert witness to testify regarding Prows's mental state at the time of the confession and how that mental state may have factored into the confession.[6] The trial court excluded this

---

4. Prows acknowledges that the police officers did not make any threats relating to his eventual punishment, yet he argues that they made other equally persuasive threats. Specifically, he points to the police officers' painting a picture of the victim herself becoming an abuser in the future if the cycle of abuse did not end with Prows. But we do not agree that pointing out such considerations—possibilities over which the police clearly exercise no control—amounts to a threat or promise of the kind pertinent to our inquiry here. *See Colorado v. Connelly,* 479 U.S. 157, 170, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) ("[T]he Fifth Amendment privilege is not concerned with moral and psychological pressures to confess emanating from sources other than official coercion." (internal quotation marks omitted)); *State v. Strain,* 779 P.2d 221, 225 (Utah 1989) ("[A]ppeals to the defendant that full

cooperation would be his best course of action have been recognized as not coercive." (citation omitted)).

5. Prows also argues that he was suffering from a lack of sleep. But the trial court found that Prows had slept the night before the interview, and Prows does not adequately challenge that finding on appeal, *see generally Chen v. Stewart,* 2004 UT 82, ¶¶ 76–80, 100 P.3d 1177 (explaining the duty to marshal the evidence when challenging a factual finding). In any event, we note that the finding is supported by the information given to the police officers on the morning of the interview.

6. [E]vidence surrounding the making of a confession bears on its credibility as well as its voluntariness.... [B]ecause questions of credibility,

testimony under rule 608 of the Utah Rules of Evidence. "This rule permits testimony concerning a witness's general character or reputation for truthfulness or untruthfulness but prohibits any testimony as to a witness's truthfulness on a particular occasion." *State v. Rimmasch*, 775 P.2d 388, 391 (Utah 1989); *see also* Utah R. Evid. 608(a) (providing that evidence attacking the credibility of a witness "may refer only to character for truthfulness or untruthfulness"). However, we do not agree that the prohibitions in rule 608 are to be read as broadly as the trial court's decision suggests.

¶ 14 In *State v. Adams*, 2000 UT 42, 5 P.3d 642, the supreme court was confronted with an issue similar to that in the instant case when the State presented expert testimony of a psychologist who stated that due to the victim's cognitive abilities, "it was unlikely [she] could be coached to tell, or was sophisticated enough to make up, the story alleged." *Id.* ¶ 6. The supreme court determined that such testimony was not barred by rule 608 because it was not a "direct opinion" as to the truthfulness of the victim. *See id.* ¶¶ 13–14. The court explained, "Although this is a subtle distinction, and one may infer from [the expert's] testimony that he finds [the victim's] story credible, there is a fundamental difference between testifying that [the victim] does not possess the mental capacity to invent or learn a fabricated story and opining that [the victim] was telling the truth...." *Id.* ¶ 13. Thus, rule 608 "does not prohibit an expert ... from giving testimony from which a jury could infer the veracity of the witness." *Id.* ¶ 14.

¶ 15 Applying this concept to the instant case, the testimony that Prows sought to present was not a direct opinion as to whether he had been truthful when making his confession but simply addressed his mental state and how such may have affected him at the time he gave his confession. In the Notice of Defendant's Intent to Call Expert Witness, Prows specified that he intended to

call the psychiatrist "in order to present evidence regarding his mental state and how such a mental state could have impacted [his] statements made to [the police officers]." Prows also stated that he wanted the psychiatrist to testify "as to his opinion that [Prows]'s mental state could have impacted the content of those statements." And even though one might infer from such expert testimony that the expert thought Prows was probably not telling the truth when he confessed, this possibility is not sufficient to require exclusion of the proposed testimony under rule 608. *See id.* Thus, the trial court erred in excluding the testimony under rule 608.

### B. Rule 403

■ ¶ 16 In its brief, the State argues that even if the expert testimony was admissible under rule 608, it was inadmissible under rule 403. Rule 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Utah R. Evid. 403. This argument is not well taken. Although the State is correct that the testimony at issue here did not concern " 'physical symptoms' " or "an objectively diagnosable disease or condition," we do not agree that this makes the expert testimony "highly speculative" and therefore of low probative value. Nor do we agree that providing the jury with information regarding the types of behaviors caused by certain mental conditions would " 'usurp the fact-finding function' " of the jury. We therefore do not agree that the risks associated with admitting the expert testimony outweighed the testimony's probative value.

### C. Harmless Error

■■ ¶ 17 "[W]e find errors by the trial court harmful only if there is a 'reasonable likelihood' that the verdict would have been

whether of a witness or of a confession, are for the jury, the requirement that the court make a pretrial *voluntariness* determination does not undercut the defendant's traditional prerogative to challenge the confession's *reliability* during the course of the trial.

*Crane v. Kentucky,* 476 U.S. 683, 688, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (citation and internal quotation marks omitted).

different had the expert testimony been included." *State v. Clopten*, 2009 UT 84, ¶ 39, 223 P.3d 1103.[7] Under the facts of this case, we do not think the error was harmful. First, the expert testimony would have impacted only the weight given to Prows's confession to the police officers. Second, there were multiple other strong pieces of evidence presented—which the jury apparently found credible—that support the ultimate result. The eleven-year-old victim testified that Prows had repeatedly molested her, discussing details not likely to be known by such a young child had she not been subjected to sexual abuse. And at least one other witness corroborated the victim's testimony: The victim's mother testified that one night she found Prows sleeping on the couch with the victim, with his hand "cupped in [her] crotch."[8] Additionally, the victim's mother testified that Prows called her the night before his police interview and tearfully apologized to her, saying "he was sorry, he never meant to hurt anybody." Under the facts and circumstances of this case, we determine that the error here is harmless, that is, there is not a reasonable likelihood that the jury would have acquitted Prows had the psychologist been allowed to testify that Prows's personality disorder made him more susceptible to giving a false confession when police officers employed the false-friend technique during the interrogation.

## CONCLUSION

¶ 18 The trial court did not err in its refusal to suppress evidence of Prows's confession. But Prows should have been permitted to introduce the psychologist as an expert witness to testify as to matters that would not have amounted to a direct opinion as to Prows's truthfulness. Nonetheless, we affirm because we are convinced that the error here was harmless. Affirmed.

¶ 19 WE CONCUR: CAROLYN B. McHUGH, Associate Presiding Judge and GREGORY K. ORME, Judge.

7. Prows argues that because the error "implicates" his constitutional right to " 'a meaningful opportunity to present a complete defense,' " (quoting *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986)), we must reverse unless the error was harmless beyond a reasonable doubt. *See generally State v. Velarde*, 734 P.2d 440, 444 (Utah 1986) ("Before federal constitutional error can be held harmless, a court must 'be able to declare a belief that it was harmless beyond a reasonable doubt.' "). But the authorities to which he cites discuss constitutional violations of a different degree—those that are in direct violation of a defendant's constitutional right. *See, e.g., id.* (reviewing the admission of statements obtained in violation of *Miranda*). When the supreme court has before addressed the type of error that occurred here—not allowing a defendant to present certain expert testimony—the court has instead conducted a harmless error analysis under the standard set forth in our analysis above. *See State v. Clopten*, 2009 UT 84, ¶ 39, 223 P.3d 1103.

8. The victim's younger sister also testified that on one occasion she "heard some giggling and [the victim] was jiggling while—while she was in the bed with [Prows]."