STATE of Utah, Plaintiff and Appellee,

v.

Jerry J. DIBELLO, Defendant and Appellant.

No. 860220.

Supreme Court of Utah.

Aug. 24, 1989.

Rehearing Denied Oct. 24, 1989.

Kenneth R. Brown, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Sandra L. Sjogren, Salt Lake City, for plaintiff and appellee.

ZIMMERMAN, Justice:

Defendant Jerry J. Dibello appeals from his conviction of second degree murder, a first degree felony. Utah Code Ann. § 76–5–203 (Supp.1988). Dibello raises four arguments on appeal. He claims that the trial court erred in (i) determining that there was sufficient evidence to submit the case to the jury, (ii) denying his post-conviction motion for a new trial based on prosecutorial misconduct in the closing statement, (iii) allowing certain state-of-mind hearsay to be admitted into evidence, and (iv) allowing a portion of a videotape of the crime scene that dwelled on the victim's body and wounds to be admitted into evidence and viewed by the jury during its deliberations. We reject his contentions and affirm the conviction.

We set out the pertinent facts in some detail because of Dibello's insufficien-cy-of-the-evidence claim and state them in a manner most favorable to the jury's verdict. *State v. Verde*, 770 P.2d 116, 124 (Utah 1989). On the morning of Sunday, July 21, 1985, the body of Tammy Dibello was found by a neighbor in the trailer she had until recently shared with her husband, defendant Jerry J. Dibello, at the S & W Trailer Park in Lakepoint, Tooele County, Utah. She had been beaten and stabbed. The medical investigators, who arrived around noon, determined that Tammy was killed sometime between 9:00 Saturday night and 4:00 Sunday morning. Jerry and Tammy had separated six days earlier, on July 15, 1985, at which time Jerry moved out of the trailer. That same day, Jerry and another trailer park resident had fought over a minor automobile accident. Jerry suffered some cuts to his face and ear during the fight. For the next few days, Jerry camped out at night or stayed with his daughter, her husband, and another couple at an apartment they shared in West Jordan. On July 20th, Jerry's daughter asked him to leave because his presence bothered the couple with whom they shared the apartment. He left. Around 10:00 or 10:30 that evening, Jerry returned to the trailer park, found Tammy at another trailer with some friends, and left with her to go to their trailer so that he could pick up some of his clothes. A few neighbors heard what they perceived to be a loud argument coming from the Dibello trailer at approximately 11:00 to 11:30 p.m. This argument appeared to end abruptly after a few minutes, followed by a door slam and the sound of a loud vehicle, possibly a pickup truck, driving off. A neighbor went over to the dimly lit Dibello trailer around 11:30 p.m. and knocked on the door, but received no response. The same neighbor returned to the trailer around 9:30 the following morning and saw bloodstains on the door. When he looked through the front window, he saw Tammy's body lying on the living room couch. She appeared to have been beaten and stabbed. The neighbor called the police.

Experts later determined that finger-prints made in the blood smeared on the

trailer door matched those on four fingers of Jerry's left hand. The amount of blood on the door was insufficient to permit blood typing. Jerry was arrested the next day. Traces of human blood were found on his chest, left arm and hand, and right thumb, although not enough to allow blood typing. Traces of blood that could not be positively identified as human were found on Dibello's right hand, right arm, and left front thigh. The driver's side door handle, driver's side window crank, steering wheel, ignition keys, gear shift, seat, and most of the dashboard switches of Jerry's pickup truck tested positive for blood, some of which was identified as human and some of which was unidentifiable. Again, there was not enough blood to permit typing. Other physical evidence consisted of head hairs with characteristics similar to Jerry's hair found between Tammy's fingers.

At trial, Jerry's daughter and other trailer park residents testified that Jerry and Tammy had had loud arguments in the past and that on occasion Jerry had been violent with Tammy. There was also testimony tending to show that Tammy expressed fear of Jerry during the week between their separation and her death and that Jerry told a neighbor shortly before he and Tammy separated that he would kill her if she ever left him. Jerry was convicted of second degree murder and sentenced to five years to life.

■ On appeal, Jerry first contends that there was insufficient evidence to warrant sending the case to the jury. This Court reviews such challenges under the same standard applied to a claim that insufficient evidence exists to support a jury verdict. We will uphold the trial court's decision if, upon reviewing the evidence and all inferences that can be reasonably drawn from it, we conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt. *See* *State v. Verde*, 770 P.2d 116, 124 (Utah 1989); *State v. Marcum*, 750 P.2d 599, 601 (Utah 1988); *State v. Pierce*, 722 P.2d 780, 781 (Utah 1986). Applying this standard, in light of the evidence related above, we conclude that the trial court did not err in submitting the case to the jury for decision.

■ Jerry's second claim is that the trial court erred in denying his motion for a new trial. *See* Utah R.Crim.P. 24 (codified at Utah Code Ann. § 77–35–24 (1982), repealed effective July 1, 1990). This motion was based on Jerry's claim that remarks made by the prosecutor during the closing argument improperly criticized Jerry's counsel's tactics and improperly implied that the prosecutor personally believed Jerry to be guilty. Counsel for both sides have considerable latitude in their closing arguments. They have the right to fully discuss from their perspectives the evidence and all inferences and deductions it supports. *State v. Lafferty*, 749 P.2d 1239, 1255 (Utah 1988); *State v. Valdez*, 30 Utah 2d 54, 60, 513 P.2d 422, 426 (1973). Nonetheless, counsel exceeds the bounds of this discretion and commits error if he or she calls to the jury's attention material that the jury would not be justified in considering in reaching its verdict. *E.g., State v. Troy*, 688 P.2d 483, 486 (Utah 1984); *Valdez*, 30 Utah 2d at 60, 513 P.2d at 426. Such conduct warrants reversal if the appellate court concludes that absent the improper argument, there was a reasonable likelihood of an outcome more favorable to the defendant. *See* Utah R.Crim.P. 30 (codified at Utah Code Ann. § 77–35–30 (1982), repealed effective July 1, 1990); *State v. Rimmasch*, 775 P.2d 388, 407 (Utah 1989); *State v. Verde*, 770 P.2d at 122; *State v. Bell*, 770 P.2d 100, 106 (Utah 1988); *State v. Hackford*, 737 P.2d 200, 204 n. 1 (Utah 1987); *State v. Knight*, 734 P.2d 913, 919–20 (Utah 1987).

■ In considering Jerry's claims under this standard, we will consider separately the two allegedly offensive remarks. The first challenge relates to the prosecutor's remarks about defense counsel's strategy. During trial, the defense introduced expert testimony to explain why the fingerprints left in the bloodstains on the Dibello trailer door were not Jerry's. When Jerry got on the stand, he testified that if they were his, they got there entirely innocently. The prosecutor argued to

the jury that a logical inference from the defense's putting on this arguably inconsistent evidence is that Jerry made up his story about how the fingerprints got on the trailer after his counsel put on the expert evidence and without telling his counsel the story. The prosecutor mused that that could be the only explanation for defense counsel's presenting inconsistent factual theories.[1] Defense counsel objected to the argument as improper because it called into question defense counsel's state of mind. The trial judge sustained the objection and instructed the jury to disregard the remarks.[2] On appeal, Jerry's counsel argues that the prosecutor's remarks were so prejudicial that an admonition could not cure them; a new trial should have been granted.

Assuming the prosecutor's remarks were error, we are not convinced that they were so prejudicial as to require that a new trial be granted. The only arguably improper part of the prosecutor's remarks was the reference to defense counsel's state of mind, and while that was irrelevant to the jury's consideration of Jerry's guilt, the mention of it was hardly likely to produce a different result. It is true that the prosecutor called attention to the alternative factual theories of the defense, but that was not impermissible. While a defendant does have the right to assert inconsistent defenses, *State v. Mitcheson*, 560 P.2d 1120, 1122 (Utah 1977), there is nothing improper in calling the jury's attention to this factual inconsistency as undermining a defendant's credibility.

 The second challenge relates to the prosecutor's remarks during rebuttal. In summarizing his view of the evidence and how it bore on Jerry's credibility, he repeatedly prefaced his statements with "I think." The assertion of personal knowledge or opinion about the facts by counsel is improper. *Lafferty,* 749 P.2d at 1255.[3] On appeal, Jerry contends that the prosecutor's comments ran afoul of this rule and constituted harmful error. Whatever merit there may be to this claim of error, the fact is that the defense made no objection at trial to these remarks. Therefore, the is-

---

**1.** The prosecutor stated:

Mr. Keller has throughout the trial attempted to make a big deal out of the fingerprints. He really pressed the expert the state called on the fingerprints. He spent a lot of time on it and he staked a lot of his case on it. Now, I'm asking you why he might have done that if the defendant, when he got up here on the witness stand, said: Sure, I could have made the fingerprints. My wife fell down, had a lot of blood coming out of her mouth. It could have got on my fingers and, yeah, it's possible that my fingerprints got on the door.

Why would Mr. Keller spend all that time? I wonder in my mind, did the defendant tell Mr. Keller about the fall-down incident before the trial started? If he had, would Mr. Keller go into that much detail and attempt to question and challenge the fingerprint testimony that much?

**2.** Mr. Keller [defense counsel]: Your honor, for the record, I wish to enter an objection at this time. Counsel is now putting me in the posture of attempting to make [me] a witness in this trial. Highly improper. We have no opportunity to respond.

I ask that this jury be asked to disregard the last remarks.

Mr. Elton [prosecution]: I submit it, your honor.

The Court: The jury will disregard the last remarks. The objection is sustained.

**3.** Under DR 7–106(C)(3) of the Revised Rules of Professional Conduct of the Utah State Bar, which was in effect at the time of Jerry's trial, trial counsel were to refrain from asserting "personal knowledge of the facts in issue, except when testifying as a witness." Furthermore, the commentary to section 3–5.8 of the ABA Standards for Criminal Justice provides, "Expressions of personal opinion by the prosecutor are a form of unsworn, unchecked testimony and tend to exploit the influence of the prosecutor's office and undermine the objective detachment that should separate a lawyer from the cause being argued." ABA Standards for Criminal Justice 3–5.8 (2d ed. 1980). DR 7–106 has been superseded by rule 3.4 of the Rules of Professional Conduct, which became effective January 1, 1988. Rule 3.4(e) provides that a lawyer shall not

[i]n trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused.

sue has not been properly preserved for appeal.[4] *See* Utah R.Evid. 103(a); *State v. Eldredge,* 773 P.2d 29, 34–35 (Utah 1989); *State v. Schreuder,* 726 P.2d 1215, 1222 (Utah 1986).

The next challenge to the verdict is a claim that the trial court erred in admitting certain state-of-mind hearsay. This evidence falls into two categories: (i) statements by Tammy concerning her fear of Jerry; and (ii) a statement by Jerry that he would kill Tammy if she ever left him. We will consider the admissibility of Tammy's statements first and then Jerry's.

The prosecutor introduced into evidence two hearsay statements made by Tammy reflecting her fear of Jerry. The first related to a request she had made a few days before her death that a friend stay overnight in her trailer. She told the friend her request was motivated by her fear of Jerry.[5] The second hearsay statement was part of a letter she wrote to Jerry following their separation in which she stated that she was afraid of him.[6]

■■■ We have no occasion to reach the merits of Jerry's claim. Even if we assume that the out-of-court statements of Tammy were inadmissible because Jerry never put her state of mind in issue by raising a claim of accident, suicide, or self-defense, *see State v. Auble,* 754 P.2d 935, 937 (Utah 1988), the issue was not adequately preserved for appeal. Jerry filed a pretrial motion in limine to suppress all statements by Tammy to third persons concerning her fear of Jerry, but the court did not grant the motion. Instead, it ruled that the prosecutor could not mention the hearsay in opening arguments and that the court would rule on the issue as it arose with respect to individual witnesses. This certainly was a permissible means of proceeding.

■■■ When evidence of the first of Tammy's hearsay statements came in, Jerry's counsel failed to object to its admission. Three witnesses later, out of the jury's presence, his counsel objected on the record. The court ruled that the statement would be stricken pending a final ruling of all such hearsay evidence but never told the jury of this ruling. Jerry's counsel failed to ask the court to inform the jury. Later in the trial, the court did rule that all statements made by Tammy to third parties indicating that she feared Jerry should be suppressed. However, following this ruling the court did not instruct the jury to disregard the testimony about the first of Tammy's hearsay statements that had already come in, and Jerry's counsel again did not request that the court instruct the jury to disregard that hearsay, nor did he ever ask for a mistrial based on the hearing of the inadmissible testimony. Therefore, although Jerry's counsel properly objected to the admission into evidence of the hearsay testimony about why Tammy asked a neighbor to spend the night in the Dibello trailer, and the court eventually sustained the objection, the jury still heard the first of Tammy's hearsay statements and was not told to disregard it. Nonetheless, Jerry cannot now complain of the court's failure to instruct the jury to disregard the testimony because he did not complain of that failure below. One who obtains a favor-

---

Utah Rules of Professional Conduct 3.4(e) (1989).

4. Rule of Evidence 103(a) provides:

> *Effect of Erroneous Ruling.* Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
> (1) *Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or
> (2) *Offer of Proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer

or was apparent from the context within which questions were asked.
Utah R.Evid. 103(a).

5. This statement was introduced during direct examination of a prosecution witness:

> Q: What did you do later that evening?
> A: Tammy asked me if I didn't mind staying with her because she was frightened of Jerry, so I stayed that night and stayed there.

6. Tammy wrote in the letter a few days before her death:

> Jerry, the romance has left your heart and, I guess, mine, too. I can't even talk to you anymore because I'm afraid of you. You

able ruling cannot complain on appeal of a failure to implement that ruling unless he or she took reasonable steps to bring that oversight to the trial court's attention in a timely manner. *See Shepard v. State*, 756 P.2d 597, 599–600 (Okla.Crim.App.1988).

■■■ We next consider Jerry's claim that the second of Tammy's hearsay statements about her fear of Jerry—the excerpt from the letter read to the jury by the prosecutor—should not have been admitted. Although the trial court's ruling on Tammy's out-of-court statements about her fear of Jerry would appear to cover this letter, at the time the letter was introduced into evidence, defense counsel expressly stated, "I have no objection, your honor." And when the prosecutor read the critical hearsay statement in the letter to the jury during closing argument, defense counsel raised no objection. Jerry cannot now complain about the introduction of this second piece of hearsay. *Supra* note 4 and accompanying text.

Jerry's final claim of erroneously admitted hearsay relates to the trial court's admission of a hearsay statement by Jerry in which he threatened Tammy. The specific hearsay objected to was introduced during direct examination of a prosecution witness: "And then Jerry [Dibello] said that if Tammy ever left him that he would kill her." Dibello allegedly made this statement on July 13th, two days before he and Tammy separated and seven days before Tammy was killed. The admission of this testimony was properly preserved for appeal, as defense counsel made a timely objection and contended that the testimony's potential for unfair prejudice out-

weighed any probative value it might have.[7] The trial court rejected the rule 403 objection. We will not overturn a trial court's evidentiary ruling under rule 403 absent an abuse of discretion. *State v. Larson*, 775 P.2d 415, 419 (Utah 1989); *State v. Cloud*, 722 P.2d 750, 752 (Utah 1986); *State v. Garcia*, 663 P.2d 60, 64 (Utah 1983). To constitute an abuse of discretion, the ruling must have been harmful error. *Larson*, 775 P.2d at 419; *Verde*, 770 P.2d at 120.

■■■ Hearsay evidence that shows a defendant's mental state prior to the commission of a crime is admissible under evidence rule 803(3) if (i) the statement was made under circumstances that indicate its reliability and (ii) it is relevant to show intent, plan, motive, design, malice, or ill will when the defendant's state of mind is an issue in the case or (iii) it is relevant to prove or explain acts or conduct of the defendant.[8] *See* Utah R.Evid. 803(3); *People v. Karis*, 46 Cal.3d 612, 624–25, 758 P.2d 1189, 1201–02, 250 Cal.Rptr. 659, 671–72 (1988); *People v. Nunez*, 698 P.2d 1376, 1378 (Colo.Ct.App.1984), *aff'd*, 737 P.2d 422 (Colo.1987); *State v. Hobson*, 234 Kan. 133, 153–157, 671 P.2d 1365, 1382–84 (1983); 2 Wharton, *Wharton's Criminal Evidence* § 307, at 100–01 (13th ed. 1972). Jerry claims that because he left his wife, and not vice versa, this evidence was irrelevant. We are not persuaded. The hearsay certainly reflects his mental state, and the jury could infer his intent from his statement. We conclude that the trial court did not abuse its discretion in finding the evidence relevant. Jerry then argues that even if relevant, the evidence should have been excluded under

---

have done all you can for me and I'm afraid of you. Don't you think that's silly?

**7.** Rule 403 of the Utah Rules of Evidence provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
Utah R.Evid. 403.

**8.** Rule 803(3) provides in pertinent part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
. . . .
(3) *Then existing mental, emotional, or physical condition.* A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.
Utah R.Evid. 803(3).

rule 403 because its potential for unfair prejudice outweighed its probative value. Again, we do not find that the trial court abused its discretion in overruling defense counsel's rule 403 objection.

Jerry's final claim of error relates to the trial court's admitting into evidence approximately six minutes of a videotape of the crime scene. A portion of the videotape showed Tammy's blood-soaked, clothed body lying on the sofa in the trailer and lingered on the body and its wounds. Jerry contends that this evidence should have been excluded under rule 403 since the videotape was extremely gruesome, inflammatory, and highly prejudicial, and all that it showed could have been proven by other means. We agree with Jerry that the trial court should not have admitted the portion of the videotape into evidence that dwelled on Tammy's body and its wounds but conclude that, although this is a very close case, the error was harmless.

■■■ As indicated in our earlier discussion of rule 403, the rule requires that a trial court find that the potential for unfair prejudice of a particular bit of evidence outweighs its probative value before the evidence must be excluded. This means that in the usual case, the presumption is in favor of admissibility. *See Lafferty,* 749 P.2d at 1256. However, we have held that certain categories of relevant evidence have an unusual propensity to unfairly prejudice, inflame, or mislead the jury. For this reason, evidence falling into these categories is uniquely subject to being used to distort the deliberative process and skew a trial's outcome. Because of this, we have held that when evidence of this type is offered, the presumption shifts; the evidence's potential for unfair prejudice is presumed to outweigh its probativeness, and the burden is on the proponent to show that this is not so. *E.g., Lafferty,* 749 P.2d at 1256. One category of evidence subject to this requirement includes gruesome photographs of a homicide victim's corpse. *Lafferty,* 749 P.2d at 1256–57; *see Cloud,* 722 P.2d at 752–53; *Garcia,* 663 P.2d at 64; *State v. Bishop,* 753 P.2d 439, 493 (Utah 1988) (Zimmerman, J., concurring in the result). Other categories of evidence carrying a presumption of unfair prejudice include a rape victim's past sexual activities with someone other than the accused, *State v. Johns,* 615 P.2d 1260, 1264 (Utah 1980), and statistical evidence of matters not susceptible to quantitative analysis, such as witness veracity, *State v. Rammel,* 721 P.2d 498, 501 (Utah 1986). As we indicated in *Bishop, Lafferty, Cloud,* and *Garcia,* gruesome photographs will often be excluded because the required showing that their unusual probative value outweighs their potential for unfair prejudice cannot be made. This is because in most cases, no legitimate need exists for the photographs of a homicide victim's corpse and whatever facts they may show can be established by other means. *Lafferty,* 749 P.2d at 1257.

■■■ We now apply this rule 403 test to the present case. The trial court permitted the prosecutor, over Jerry's objection, to show approximately six minutes of a much longer color videotape, taken by the Tooele County Sheriff's Department, to the jury during the trial and again during its deliberations.[9] A detailed description of the portion shown to the jury is necessary.

---

9. The State contends that Jerry failed to preserve his objection to the admission of the videotape into evidence because at the time it was offered into evidence, defense counsel merely stated, "I previously stated my objection in chambers to that. I believe the court overruled that objection." Also, the in-chambers discussion to which defense counsel referred was not on the record. The State claims that this statement was not the "timely objection ... stating the specific ground of objection" required by rule 103. Utah R.Evid. 103(a)(1). The State's contention is without merit. A defendant is not required to object or renew his or her objection at trial to preserve the issue for appeal when the trial judge is the same one to whom a pretrial motion to suppress evidence was submitted and where the record or transcript indicates that a hearing on the motion was held and the motion denied. *See, e.g., State v. Johnson,* 748 P.2d 1069, 1071–72 (Utah 1987). Defense counsel filed a pretrial motion in limine to suppress the thirty- to forty-five-minute videotape in its entirety on the grounds that it had no evidentiary value and was repetitious and prejudicial. It is clear from the transcript that this motion was argued in chambers before the videotape was introduced into evidence. The trial court denied the motion, although it required that only a

The videotape began outside the Dibello trailer and initially showed the bloody fingerprints on the outside of the trailer door. Once inside the trailer, the camera slowly scanned the room and then showed Tammy's body as it lay slumped against the armrest of the sofa. It gradually shifted the focus from a view of her entire body to a closeup of the stab wounds in her chest, her slit throat, and her beaten face. Tammy's neck and shoulders and the entire upper section of her blouse were covered with congealing blood. The camera lingered on this closeup for several moments. The remainder of the tape amounted to a tour of the trailer, including a view of stuffed toys and a picture on the wall of the cramped bedroom depicting Tammy and Jerry.

 We conclude that the trial court erred in admitting the portion of the videotape into evidence that lingered on Tammy's body and wounds. It certainly qualifies as "gruesome" under *Lafferty* and was presumptively inadmissible under rule 403, absent some convincing showing by the State. No such showing was made. This portion of the videotape was not a necessary part of a view of the crime scene, had no apparent probative value, and was entirely cumulative of other evidence already presented at trial, including the medical examiner's report about the manner of death. The State's argument that this portion of the videotape was properly admitted because the jury might disbelieve the other evidence establishing how Tammy died, and that, in any event, jurors view this type of scene on television daily ignores the teaching of *Bishop*, *Lafferty*, *Cloud*, and *Garcia*. The gruesome portion

of the videotape had no unusual probative value that could overcome its obvious potential for creating unfair prejudice. Therefore, it should have been excluded under rule 403.

 Having found that the admission of the videotape was error, we must determine the harmfulness of the trial court's error. Under rule 30 of the Utah Rules of Criminal Procedure, an error warrants reversal only if the substantial rights of a party are affected. Utah R.Crim.P. 30 (codified at Utah Code Ann. § 77–35–30 (1982), repealed effective July 1, 1990). This occurs when a reasonable likelihood exists that absent the error, the result would have been more favorable to the defendant. *Rimmasch*, 775 P.2d at 407; *State v. Tuttle*, 780 P.2d 1203, 1213 (Utah 1989); *Verde*, 770 P.2d at 122; *Bell*, 770 P.2d at 106; *Hackford*, 737 P.2d at 204 n. 1. This "reasonable likelihood" standard is met if our confidence in the outcome is undermined. *Knight*, 734 P.2d at 919–20. In determining whether the erroneous admission of the gruesome portion of the videotape into evidence undermines our confidence in the verdict, we must balance its prejudicial effect against the fact that three other gruesome photographs of Tammy were admitted into evidence. Two of the photographs were admitted over defense counsel's objection, and had the issue been raised on appeal, we likely would conclude that the trial court erred in admitting those two photographs for the same reason that it erred in admitting the videotape.[10] However, Jerry's counsel has not made any claim of error in the admission of the photographs. Defense counsel did expressly state that he had no objection to the introduction of the third photograph, which the

---

brief portion of the tape be shown. Therefore, it was not necessary for defense counsel to state its objection to the admission of the videotape during trial to preserve the issue for appeal.

**10.** The first photograph admitted over defense counsel's objection was a 3- × 4–inch Polaroid photograph made from a slide taken by a police investigator at the Dibello trailer on July 21, 1985. It is a closeup of Tammy's body lying on the sofa, and it looks down at her upper torso. Her blouse and the sofa underneath her are blood-drenched, her face is bruised and bloody, congealing blood is seen on her chest and left

shoulder, and the stab wound in her throat is visible. The second photograph admitted over defense counsel's objection was taken by the medical examiner on July 22nd, when he performed the autopsy on Tammy. The 3- × 4–inch photograph is a closeup of Tammy's upper chest and head. Four stab wounds just below her neck are visible, as is her slit throat. The throat wound on the left side of her neck gapes open and is approximately three inches long. Tammy's entire face is puffed and swollen and extensive bruising is seen around her left eye and cheekbone.

prosecutor introduced early in the trial, purportedly to show the crime scene. This photograph is in color and slightly grainy, but it clearly shows Tammy's bloody body slumped on the sofa and the gaping wound where her throat was slashed. By failing to object to this gruesome photograph that would have been excludable under rule 403 and by failing to complain on appeal of the admission of the other two gruesome photographs, Jerry effectively undermined his claim that the improper introduction of the comparably gruesome videotape constituted harmful error. *See Garcia*, 663 P.2d at 64–65. Although the portion of the videotape lingering over Tammy's body and wounds was gruesome and revolting, we cannot conclude that it was so dissimilar to the three photographs whose admission into evidence is not being appealed as to justify our determining that in the absence of this portion of the videotape, there was a reasonable likelihood of a more favorable result for Jerry.

Despite the serious errors that occurred at trial, for the reasons stated, Jerry's conviction of second degree murder is affirmed.

HALL, C.J., HOWE, Associate C.J., and STEWART and DURHAM, JJ., concur.