**In re J.D.M., A person under eighteen years of age.**

**CACHE COUNTY, Appellant,**

v.

**A.W. LAURITZEN, Appellee.**

**No. 900033–CA.**

Court of Appeals of Utah.

April 25, 1991.

Gary O. McKean (argued), Cache County Atty., Patrick B. Nolan, Deputy County Atty., Logan, for appellant.

A.W. Lauritzen (argued), Logan, for appellee.

Before BENCH, JACKSON and RUSSON, JJ.

## OPINION

JACKSON, Judge:

Cache County appeals from a decision awarding attorney fees to A.W. Lauritzen. Cache County challenges the decision on four grounds: (1) under Utah Code Ann. § 78–3a–35 (Supp.1990), a person does not have a right to court-appointed counsel in a private proceeding; (2) even if such a right exists, the juvenile court is bound by Cache County's public defender agreement; (3) the county is not responsible for any fees resulting from court appointments made outside of the county's agreement; and (4) the juvenile court must give the county notice of appointments made outside any agreements the county may have.

## FACTS

On October 21, 1988, attorney Thomas L. Willmore filed a private petition in the First District Juvenile Court of Cache County, seeking termination of the parental rights of Kelli A. McArthur to J.D.M., a person under eighteen years of age. The petition was filed on behalf of Ivan and Martha Bingham who sought to adopt the child.

In a letter to the juvenile court, dated December 29, 1988, Deputy Cache County Attorney, James C. Jenkins, acknowledged that his office had received notice of the trial set for January 11, 1989. However, his letter further stated that his office had no information concerning the matter.

On February 15, 1989, McArthur appeared in the First District Juvenile Court

to answer the petition. At that time, she requested court-appointed counsel based on indigency. On February 28, 1989, the court appointed attorney A.W. Lauritzen to represent McArthur.

On July 5, 1989, trial was held and the parental rights of McArthur were terminated. This court subsequently affirmed the trial court's decision. *In re J.D.M.; Bingham v. McArthur*, 808 P.2d 1122 (Utah Ct.App.1991).

In August and September of 1989, Cache County received billings from Lauritzen for legal services rendered on behalf of McArthur. In a letter to the juvenile court dated September 28, 1989, the Cache County Attorney requested a hearing on the matter.

Cache County had an agreement for indigent legal services with Robert W. Gutke and Nathan D. Hult to render counsel to qualified indigents in all criminal and civil matters where Cache County is obligated to pay for indigents. The agreement was executed on March 8, 1988, and was in effect from January 1, 1988 through December 31, 1988. The agreement was not automatically renewable. Rather, it was renewable only upon the parties' mutual consent and endorsement in writing. Cache County offered no evidence that the agreement was renewed by an endorsed agreement after 1988.

Judge Bachman heard the matter on November 7, 1989 and subsequently held Cache County responsible for not only the cost and expenses of counsel for all hearings before the juvenile court, but the additional cost of counsel on appeal.

## STANDARD OF REVIEW

■ We accord a lower court's statutory interpretations no particular deference, but assess them for correctness as we would any other conclusion of law. *State v. Serpente*, 768 P.2d 994, 995 (Utah Ct.App. 1989) (citations omitted).

## PRIVATE PETITION PROCEEDINGS

■ In Utah, except as otherwise provided for by law, the juvenile court has original jurisdiction in proceedings to terminate the legal parent-child relationship.[1] Utah Code Ann. § 78–3a–16(1)(f) (Supp.1990). Parties to a proceeding in juvenile court have the right to be represented by counsel. Utah Code Ann. § 78–3a–35(2)(a) (Supp.1990) states, in pertinent part:

> Parents, guardians, the child's custodian, and the child, if old enough, shall be informed that they have the right to be represented by counsel at every stage of the proceedings.

Moreover, Rule 33 of the Utah State Juvenile Court Rules of Practice and Procedure states:

> The parties may be represented by counsel retained by them in all proceedings. The court shall appoint counsel for the parties if it finds that they are indigent, unless representation is competently and intelligently waived....

Cache County argues that, because the language of neither § 78–3a–35(2)(a) nor Rule 33 specifically provides for proceedings where the petition is filed by a private party, it is not responsible for Lauritzen's fees. On the other hand, Lauritzen argues that nothing in the juvenile court law, §§ 78–3a–1 through –62, in any way distinguishes between handling or processing of public and private petitions before the juvenile court.

Whether a person has a right to court-appointed counsel in a private proceeding in juvenile court turns on the meaning of the term "proceedings" in § 78–3a–35(2)(a) and Rule 33. The Utah Supreme Court has stated that the "primary responsibility in construing legislation is to give effect to the intent of the legislature." *American Coal Co. v. Sandstrom*, 689 P.2d 1, 3 (Utah 1984). Further, on another occasion the court stated:

> [A] statute should be applied according to its literal wording unless it is unreasonably confused or inoperable. We

---

1. Pursuant to Utah Code Ann. §§ 78–30–4.6 & –7 (Supp.1990), the district court may have jurisdiction over termination proceedings when a petition for adoption includes a claim for termination of a parent-child relationship.

must assume that each term in the statute was used advisedly by the Legislature and that each should be interpreted and applied according to its usually accepted meaning. Where the ordinary meaning of the terms results in an application that is neither unreasonably confused, inoperable, nor in blatant contradiction to the express purpose of the statute, it is not the duty of this Court to assess the wisdom of the statutory scheme.

*West Jordan v. Morrison,* 656 P.2d 445, 446 (Utah 1982) (citations omitted). We have acknowledged the Utah Supreme Court's guidelines for statutory interpretation. *Gleave v. Denver & Rio Grande Western R.R. Co.,* 749 P.2d 660 (Utah Ct. App.), *cert. denied,* 765 P.2d 1278 (1988).

Therefore, in interpreting whether the term "proceeding" includes private as well as public petitions, our primary responsibility is to construe the term in accordance with the legislature's intent. *American Coal,* 689 P.2d at 3. Further, we must interpret the word "proceedings" according to its ordinary and usually accepted meaning. *Morrison,* 656 P.2d at 446.

The purpose of the statutes governing the juvenile courts, §§ 78–3a–1 through –62 is stated in § 78–3a–1 (Supp.1990) which provides, in pertinent part:

The court has the jurisdiction, powers, and duties under this chapter to:

. . . .

(7) consistent with the ends of justice, strive to act in the best interests of the children in all cases and attempt to preserve and strengthen family ties where possible.

Further, when determining the plain and ordinary meaning of statutory terms we turn to the dictionary for guidance. *Serpente,* 768 P.2d at 996. Webster's Third New International Dictionary 1807 (1961), defines the term "proceedings," as "the course of procedure in a judicial action or

in a suit in litigation," "legal action," "a particular action at law or case in litigation." We note the dictionary definition does not distinguish between public and private actions or suits in litigation. Rather, it defines "proceedings" as synonymous with the broad term "legal action." Therefore, it appears that the term "proceeding" is ordinarily and commonly understood as a broad term which encompasses public as well as private actions.

We conclude that the term "proceedings" as used in § 78–3a–35(2)(a) and Rule 33 includes private as well as public petitions. Such an interpretation is consistent with the ordinary and usually accepted meaning of the term "proceedings." Moreover, it gives effect to the legislature's expressed purpose of protecting the child's best interests by ensuring that all parties involved in a juvenile proceeding, whether the petition be public or private, have counsel.

## THE PUBLIC DEFENDER AGREEMENT

■ Cache County also argues that any court appointment of counsel must be pursuant to the terms of its 1988 agreement for indigent legal services with Robert W. Gutke and Nathan D. Hult.[2] That agreement provides in pertinent part:

A. The PUBLIC DEFENDER [Robert W. Gutke and Nathan D. Hult] shall provide legal services and representation to qualified indigents in all matters involving criminal charges, in all Juvenile court criminal proceedings, and in all civil proceedings in which the COUNTY is obligated to pay for legal services for indigents. . . .

. . . .

(4) and juvenile matters involving deprivation of parental rights, where the State is required to provide indigents with legal representation.

2. As noted above, the agreement for indigent legal services was not automatically renewable; it required an endorsed written agreement. The juvenile court was only given an unsigned copy of that agreement which expired December 31, 1988. Consequently, it made no findings as to

whether there was a similar agreement in effect in February 1989, when the court appointed counsel for McArthur. Because the existence of a valid agreement is immaterial to our decision today, we do not address this issue.

Under § 78–3a–35(2)(a) the legislature empowers the juvenile court to appoint counsel in either of two ways: First, if a parent, guardian, the child's custodian or a child "requests an attorney and is found by the court to be indigent, counsel shall be appointed by the court." Section 78–3a–35(2)(a). Second, "[t]he court may appoint counsel without a request if it considers representation by counsel necessary to protect the interest of the child or of other parties." Section 78–3a–35(2)(a).

The language of § 78–3a–35(2)(a) gives the court authority to "appoint" counsel. Nothing in the language qualifies this authority to appoint. Further, nothing in the language of § 78–3a–35(2)(a) states or implies that the court's power may be circumscribed by any agreements entered into by the county or any other party. Therefore, we interpret the statute as giving the court dispositive authority to determine when to appoint counsel, and whom to appoint as counsel. We note that our interpretation of § 78–3a–35(2)(a) is consistent with the inherent authority of courts to appoint counsel when the need arises. *See Washington County v. Day*, 447 P.2d 189, 191 (Utah 1968). Hence, we conclude that the juvenile court's authority to appoint counsel was not limited by the purported agreement for indigent legal services.

## PAYMENT OF FEES

■ Cache County argues that it is not responsible for fees resulting from court appointments which are not made pursuant to its agreement.

We disagree. Section 78–3a–35(2)(b) (Supp.1990), states, in pertinent part, that "[t]he cost of appointed counsel, including the cost of counsel and expense of appeal, shall be paid by the county in which the hearing is held." We regard the language of § 78–3a–35(2)(b) as mandatory; it directs the county to pay for the "cost" of appointed counsel at every stage of the proceedings. This mandatory language applies regardless of any existing agreements.

Further, the language of § 78–3a–35(2)(b) extends the county's financial responsibility to any appeals. We interpret the phrase, "cost of appointed counsel" as "including" the fees of counsel for any appeals. Further, the "cost of appointed counsel" includes the "expense of appeal," such as filing and docketing fees and other out of pocket expenses incurred. Any other interpretation would be inconsistent with "the right to be represented by counsel at every stage of the proceedings." *See* § 78–3a–35(2)(a).

Our examination of § 78–3a–35(2)(b) leads us to conclude that the county is solely responsible for the "cost" of appointed counsel, i.e., fees and expenses from the initial proceeding through any appeals.

## NOTICE

■ James C. Jenkins, Deputy Cache County Attorney, in a letter to the juvenile court dated December 29, 1988, acknowledged that his office had received notice of the trial. However, the letter further stated that he had no information regarding the matter. The next correspondence between Cache County and the juvenile court was by letter dated September 28, 1989 from Deputy Cache County Attorney, Patrick B. Nolan, requesting a hearing regarding the bill which Lauritzen submitted for his representation of McArthur. Cache County asserts that had it been notified of the juvenile court's appointment of Lauritzen, it could have drawn the juvenile court's attention to the agreement, thereby avoiding this conflict.

Section 78–3a–35(2)(a) empowers the juvenile court to appoint counsel outside of any existing contract the county may have. Moreover, there are no provisions requiring the court to notify the county when it appoints counsel outside of an existing agreement. Therefore, we conclude, the juvenile court is not obligated under § 78–3a–35(2)(a) to notify the county when it appoints counsel outside of any agreement the county may have.

We recognize that some expenses might be saved if the juvenile court were required to notify or consult with the county when appointing counsel for indigent parties.

Nonetheless, this is an issue properly left for the legislature to address.

## CONCLUSION

Section 78–3a–35(2)(a) provides for court-appointed counsel regardless of whether the proceedings were initiated by a public or private party. Section 78–3a–35(2)(a) empowers the juvenile court to appoint counsel for indigent parties; that power may not be circumscribed by any agreements executed by the county. Section 78–3a–35(2)(b) mandates that the county is solely responsible for the cost of appointed counsel from the initial proceeding through any appeals. Therefore, we affirm the juvenile court's decision and remand for determination of attorney fees incurred in this appeal.

BENCH and RUSSON, JJ., concur.