STATE of Utah, Plaintiff and Appellee,

v.

Gregory Lynn JAIMEZ, Defendant
and Appellant.

No. 900212–CA.

Court of Appeals of Utah.

Aug. 20, 1991.

Keith H. Chiara, Price, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen., and Kenneth A. Bronston, Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before GARFF, GREENWOOD and JACKSON, JJ.

## OPINION

GARFF, Judge:

Defendant, Gregory Lynn Jaimez, appeals a conviction for injury to a jail, a third degree felony, in violation of Utah Code Ann. § 76–8–418 (1990). We affirm.

On November 7, 1989, Correction Officer Jay Nelson, Carbon County Sheriff's Office, was alone on duty in the Carbon County jail in the squad room, which is located directly under the inmates' cells. At 11:30 p.m. he heard a commotion and went upstairs to investigate. He found some, if not all, of the seven inmates then incarcerated in a common area. Defendant asked to make a telephone call and Officer Nelson refused him permission. Officer Nelson demanded that all the inmates go to bed and defendant replied, "No. Make us." Officer Nelson called for assistance. Officers Jerry Cowan and Steven Raber arrived and conducted the inmates to their cells without any problems. As he was being led away, defendant yelled: "Don't give up, you guys, now." "Let's show what we can do, because we're pissed off." "Let's flood the jail." The three officers then went downstairs.

Five or six minutes later, the officers observed water coming from the squad room ceiling. They went upstairs and found the cell block floor flooded with approximately four to five inches of water.

They turned off the water to the cells and immediately returned downstairs. Shortly thereafter, the officers saw bright moving flashes, indicating heat sources, on the television monitors trained on the cell block area which contained defendant and codefendant Jerry Lee Adderman. They went back upstairs and found books burning. They removed the two inmates to the drunk tank. As defendant was being moved to the drunk tank, he made several angry and insulting comments to Officer Cowan to the effect that Officer Cowan had been cuckolded by defendant and that defendant had fathered Mrs. Cowan's children.

Each inmate was then moved to the drunk tank, his cell was cleaned out, and then each inmate was returned to his cell. As the officers were cleaning out the cells, they noticed that the toilet in defendant's cell was overflowing as a result of a toilet paper roll stuffed in the commode and that more toilet paper was stuffed in the sink. The sink and toilet in the cell next to defendant's were also plugged with toilet paper.

As a result of the water damage, the entire ceiling, ceiling insulation, and light fixtures in the squad room had to be replaced. The squad room was a large common room. It was at times used as a jail, and at other times for purposes other than confining inmates. Specifically, the squad room was used for inmate bookings, consultations between inmates and their attorneys, telephone calls from inmates to bond agents, and interviews between inmates and Adult Probation and Parole officers. While inmates were in the squad room, they were not free to leave but were either locked in or were guarded by an officer who oversaw the exit door.

Defendant and two codefendants, Jerry Lee Adderman and Kenneth Mark Smith, were charged with injuring a jail, a third degree felony under Utah Code Ann. § 76–8–418 (1990). Defendant asserted that he could not afford a transcript of the preliminary hearing, although he did have access to tape recordings. His motion for a free transcript of the hearing was denied. Defendant's motion to sever his trial from that of his codefendants was also denied. Defendant also made a motion in limine seeking to prohibit prosecution witnesses from referring to his comments about Officer Cowan's wife.[1] That motion was also denied.

After a trial on March 14 and 15, a jury found defendant guilty of the charged offense, and defendant was sentenced to a term of zero to five years. On appeal, defendant challenges the denial of each of his motions. He also asserts that the property damaged was not a "jail" within the meaning of the statute, and that the trial court erred in not instructing the jury that criminal mischief was a lesser included offense.

## ADMISSIBILITY OF EVIDENCE

We first consider whether the court committed manifest error in denying defendant's motion to exclude his statements about Officer Cowan's wife. *State v. Maurer*, 770 P.2d 981, 983 (Utah 1989). Defendant claims the statements' probative value was outweighed by the statements' prejudicial effect. The general rule is that "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Utah R.Evid. 403. "[A]ppraisal of the probative and prejudicial value of evidence under rule 403 is generally entrusted to the sound discretion of the trial judge and will not be upset on appeal absent manifest error." *Maurer*, 770 P.2d at 983. *See also State v. Griffiths*, 752 P.2d 879, 883 (Utah 1988); *State v. Jamison*, 767 P.2d 134, 137 (Utah App.1989).

In determining admissibility of evidence, the court must weigh its probative value

---

1. Officer Cowan testified as follows:
   A: Jaimez got into my face and said, "I fucked your old lady, and she's pregnant with my kid."
   Q: Did he say anything else to you at that time?

   A: He says, "You're raising my kids. Your old lady had my kids, and you're raising my kids."

against its tendency to unfairly prejudice the defendant. Utah R.Evid. 403; *Jamison*, 767 P.2d at 137. "Unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Maurer*, 770 P.2d at 984 (quoting Fed. R.Evid. 403 advisory committee's note). Evidence presents unfair prejudice where it "substantially outweighs the probative value of the proffered evidence." *Id.* (quoting M. Graham, *Handbook of Federal Evidence* § 403.1 at 192–93 (2d ed. 1986)).

■ "[I]n the usual case, the presumption is in favor of admissibility." *State v. Dibello*, 780 P.2d 1221, 1229 (Utah 1989). Certain categories of evidence, however, are "unique as subject to being used to distort the deliberative process and skew a trial's outcome." *Id.* In such cases, the presumption shifts and the burden is on the proponent to show that the probativeness outweighs the evidence's unfair prejudice. *Id.* The *Dibello* court included within these categories "gruesome photographs of a homicide victim's corpse, a rape victim's past sexual activities with someone other than the accused, and statistical evidence of matters not susceptible to quantitative analysis, such as witness veracity." *Id.* and accompanying cites. Error is not reversible unless it is of such a degree so as to distort the deliberative process and to skew the trial's outcome. *Id.*

■ Defendant's remarks do not fall within the *Dibello* categories of evidence which unfairly distorts the deliberative process and skews a trial's outcome. Therefore, the burden was on him to show that any unfair prejudice outweighed the probative value of the evidence. He argues that the very nature of the statements was outrageous and would therefore obviously evoke a prejudicial response by the jury against him. The State argues that the comments are probative of defendant's angry state of mind shortly before the damage to the jail occurred. Unlike *Dibello* or *Maurer*, which each involved homicides, this case involves a crime against property. Moreover, the "outrageous" comments were not directed against the victim.

Therefore, the jurors' emotions were not as likely to be aroused by the comments.

While the comments were crude and designed to outrage Officer Cowan, the court acted within its discretion in determining that the comments would not incite the jurors to set aside reason and to rely on their emotions to determine whether defendant committed a crime against property. We therefore hold that the court acted within its discretion in admitting the comments.

## MOTION TO SEVER

We next consider whether the court abused its discretion in denying defendant's motion to sever. Rule 9(b) of the Utah Rules of Criminal Procedure allows for two or more defendants to be charged and tried together. Rule 9(c) requires the court to grant a severance or other proper relief if it appears that a defendant is prejudiced by being tried with a codefendant.

■ Thus severance is not a matter of right, but is granted when the court determines that "prejudice to the defendant outweighs considerations of economy and practicalities of judicial administration, with doubts being resolved in favor of severance." *State v. Velarde*, 734 P.2d 440, 444–45 (Utah 1986). On review, we reverse a denial of a motion to sever only if appellant affirmatively shows that his or her right to a fair trial has been impaired. *Id.* at 445 & n. 10. In *Velarde*, the Utah Supreme Court analogized this standard of review to Utah R.Crim.P. 30(a), which holds that any error which does not affect the substantial rights of a party shall be disregarded. The court emphasized that substantial rights are affected only when, absent the error, there would have been a reasonable likelihood of a more favorable result. *Id.*

Here, defendant argues that Adderman's defense was antagonistic to him because Adderman pled not guilty. Alternatively, defendant argues that, if tried separately, Adderman could have been required to testify and his testimony would have exculpated defendant.

As to the first claim, "[a]ntagonistic defenses alone are not sufficient to require a separate trial. The test of whether a codefendant's antagonistic defense requires severance is whether the defense conflicts with that of the other defendant to the point of being irreconcilable and mutually exclusive." *Id.* at 445.

Here, defendant did not specifically raise the issue of antagonistic defense in his motion to sever, nor did he show that Adderman would testify and that Adderman's testimony would exculpate him. Further, Adderman never testified, nor did he present a case. When Adderman's counsel had occasion to cross-examine a witness, he did not bring up any antagonistic theory nor conflicting fact statements. In short, the record reveals no defense theories that could be considered irreconcilable and mutually exclusive. Further, the evidence presented by the State was fully applicable to each defendant: the behavior of the defendants, the layout of the jail, and the flooding and subsequent damage to the jail. We conclude that, under these circumstances, considerations of judicial economy outweigh any possible prejudice to defendant from joinder of his trial with that of Adderman.

Defendant also claims that Adderman's testimony would have exculpated him had their trials been severed. That assertion seems unlikely since it is reasonable to assume that Adderman would have asserted his right against self-incrimination and refused to testify had the trial been severed. *See United States v. Dickey,* 736 F.2d 571, 590 (10th Cir.1984) *cert. denied,* 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985). No Utah case is on point, but other jurisdictions have held that where a defendant cannot show that his or her codefendant would testify and that the testimony would be favorable, the court does not abuse its discretion in refusing to sever. *See e.g., United States v. Studley,* 892 F.2d 518, 523–25 (7th Cir.1989); *United States v. McNeal,* 865 F.2d 1173, 1174 (10th Cir. 1989); *United States v. Causey,* 834 F.2d 1277, 1287 (6th Cir.1987); *United States v. Little,* 753 F.2d 1420, 1446 (9th Cir.1985);

*United States v. Pruitt,* 763 F.2d 1256, 1263 (11th Cir.1985) *cert. denied* 474 U.S. 1084, 106 S.Ct. 856, 88 L.Ed.2d 896 (1986); *People v. Pappadiakis,* 705 P.2d 983, 986 (Colo.App.1985), aff'd, *Peltz v. People,* 728 P.2d 1271 (Colo.1986); *State v. Falke,* 237 Kan. 668, 703 P.2d 1362, 1369 (1985).

■ Accordingly, we hold that the court acted within its discretion in refusing to sever the trial where defendant could not show that Adderman would testify in a severed trial and that any testimony given would be relevant and favorable. In other words, the court acted within its discretion in refusing to sever where defendant could not show that a severance would have created a reasonable likelihood of a more favorable result.

## INJURY TO JAIL

■ Defendant claims that he did not commit "injury to a public jail" pursuant to Utah Code Ann. § 76–8–418 (1990) because only minimal damage occurred to the area where the prisoners were usually confined and because most of the damage occurred to the squad room. We review for correctness a trial court's statutory interpretation, according it no particular deference. *Cache County v. Lauritzen,* 810 P.2d 494, 496–97 (Utah App.1991); *State v. Swapp,* 808 P.2d 115, 230 (Utah App.1991).

Utah Code Ann. § 76–8–418 (1990) provides:

> Every person who willfully and intentionally breaks down, pulls down, or otherwise destroys or injures any public jail or other place of confinement is guilty of a felony of the third degree.

No Utah appellate court has interpreted this section. However, Utah Code Ann. § 76–1–106 (1990) provides that the penal code should be "construed according to the fair import" of its terms. Moreover, one of the fundamental rules of statutory construction is that the statute should be interpreted according to its plain meaning. *State v. Jones,* 735 P.2d 399, 402 (Utah App.1987).

■ As to whether the jail had been damaged, the State presented ample evi-

dence demonstrating that, while the squad room was at times used for purposes other than confining inmates, it was also used for jail purposes. Because one of the major uses of the squad room was to house inmates and to process them, we find no error in the court's conclusion that the squad room was part of the jail as that term is used in the statute.

## LESSER INCLUDED OFFENSE

We next consider defendant's claim that the trial court erred in not including an instruction regarding a lesser included offense. The State concedes that there is a statutory overlap between the crimes of injury to a jail and criminal mischief. Therefore, we need only determine whether the evidence presented a rational basis for a verdict acquitting defendant of injury to a jail, and at the same time, convicting him of criminal mischief. Utah Code Ann. § 76-1-402 (1990); *State v. Shabata*, 678 P.2d 785, 790 (Utah 1984); *State v. Baker*, 671 P.2d 152, 157-58 (Utah 1983). In determining existence of a rational basis, the court does not judge the credibility of the evidence, but only decides "whether there is a sufficient quantum of evidence presented to justify sending the question to the jury." *Id.* at 159. Further, the court must view the evidence and the inferences that can be drawn from it in the light most favorable to the defense. *State v. Crick*, 675 P.2d 527, 532 (Utah 1983). Because this question is one of law, we review for correctness and do not defer to the trial court. *Saunders v. Sharp*, 806 P.2d 198, 199-200 (Utah 1991).

In the present case, any damage to the facility amounted to an injury. And, as we have already discussed, the area damaged was the jail. Therefore, there is no interpretation of the evidence that would rationally allow for acquittal of injury to a jail and, at the same time, allow for a conviction of criminal mischief. Therefore, the court did not err in refusing to instruct on a lesser included offense.

## RIGHT TO TRANSCRIPT

Defendant contends that the court's refusal to provide him with a free transcript of the preliminary hearing denied him effective assistance of counsel and violated his state and federal constitutional rights. Defendant contends tape recordings of the proceedings are not a suitable substitute.

This issue is controlled by *State v. Neeley*, 748 P.2d 1091, 1095 (Utah 1988). *Neeley* recognized that "the preliminary hearing is an important step in the criminal process in that it serves as both a discovery device and a means to preserve evidence for trial." *Id.* *Neeley* also recognized that a defendant has a right to a transcript of the preliminary hearing upon timely request, and that "failure to provide a complete transcript may be harmless error if it does not prejudice a party." *Id. See also Britt v. North Carolina*, 404 U.S. 226, 228-30, 92 S.Ct. 431, 434-35, 30 L.Ed.2d 400 (1971) (failure to provide transcript not error where defendant had an informal alternative substantially equivalent to a transcript).

In this case, defendant had access to tape recordings of the preliminary hearing. Neither in his motion for a transcript nor on appeal does defendant explain how relying on recordings versus a transcript would prejudice him. Absent a showing that tape recordings were inadequate for the task, we find no error in the trial court's refusal to provide a free transcript where defendant had a substantial equivalent available to him.

## CONCLUSION

In conclusion, we hold that the court acted within its discretion in refusing to sever the trial. We also hold that the court did not err in concluding that defendant caused injury to a jail, in refusing to instruct on a lesser included crime, or in refusing to provide a free transcript where defendant had a substantial equivalent available to him.

Affirmed.

GREENWOOD and JACKSON, JJ., concur.